RICHARD J. OTTE, *Admr., etc. v.* HARRY MILLER

(No. 9404)

Submitted January 14, 1943. Decided February 2, 1943.

318

*Martin Brown,* for plaintiff in error.
*Lloyd Arnold,* for defendant in error.

Fox, Judge:

This is an action for wrongful death, instituted in the Circuit Court of Marshall County. Plaintiff's decedent, Mamie Otte, was killed on the 19th day of December, 1941, by being struck by an automobile operated by the defendant, Harry Miller. A trial of the action before a jury, during which a view of the scene of the accident was had, resulted in a verdict for the defendant, and judgment thereon, to which judgment plaintiff prosecutes this writ of error.

The accident occurred on a public highway, known as Glendale Heights Detour, and at a point between McMechen and Glendale. The defendant was driving his automobile from, at or near McMechen toward Glendale. The plaintiff's decedent lived in a house on the left side of the highway in the direction in which the automobile was being driven. Late in the afternoon of the day of her death, she left her home for the purpose of carrying a bottle of milk to the home of a neighbor who lived a few doors below her, and on the same side of the highway. The defendant, accompanied by two men of foreign birth, was driving his automobile in the same direction in which the plaintiff's decedent was walking. The evidence is not clear on what portion of the highway she was walking.

The highway was paved for a width of eighteen feet, and there was a berm on each side thereof. At or near the Otte residence, an automobile in the rear of that being driven by the defendant, blew for the road and, as shown by a clear preponderance of the evidence, passed defendant's automobile on the left. Immediately thereafter, plaintiff's decedent was struck by the defendant's automobile near the center of the highway. The evidence does not disclose how she reached the center of the highway, or what caused her to occupy that position, but that she was at or near that point seems to be clearly established. Aside from the defendant and the two men who were with him in his automobile, no one' saw the actual striking of the decedent. Several witnesses testify as to seeing the body of the decedent being thrown up over the front of the defendant's automobile.

We think it clearly shown that plaintiff's decedent was at or near the center of the highway when she was struck. The witness Ballard, who testified for the defendant, saw her a' short time before she was actually struck, and so states. Clyde Gatewood, who testified for the plaintiff, states that the defendant's automobile was on the left side of the highway when he saw it after he heard the crash and at the time decedent's body was being thrown over the front of the automobile; but on cross-examination, he modifies this statement to some extent, and admits that the left side of the automobile may have been near the center of the highway. Charles Clark, who also testified for the plaintiff, and was working with Clyde Gatewood, and had the same opportunity of observation, says that defendant's automobile was near the middle of the road when he first saw it. Hubert Otte, a son of the decedent, says that he was in the Otte home, near a window from which he could see the highway; that he heard a crash, and when he looked, saw the body of his mother on the left side of the road, and the "car was on the lefthand side of the road right alongside of her." The evidence clearly established, from actual measurement, that after the decedent's body landed on the highway, her head was

too feet and eight inches from the left edge of the paved portion of the highway, and her body extended in a slightly diagonal direction toward the center of the highway; so that the body must have extended very close to the center of the highway, and in the very nature of things, the automobile could not have been, for any considerable distance, on the left side of the center line at that time. The claim that the defendant's automobile was on the left side of the highway where it struck decedent is sought to be established from alleged statements of the defendant, claimed to have been made to the plaintiff and Clyde Gatewood, to the effect that he, the defendant, was forced to the left side of the road by a passing automobile, which passed him on the wrong side. These statements, the defendant denies.

The defendant's version of the accident is supported by his own testimony; that of the witnesses Ballard, and the two men of foreign birth who were riding with the defendant in his automobile. Ballard was driving a truck in the same direction as that of the defendant's automobile. He says that he looked ahead and he saw the decedent before the automobile struck her. He states that she had a quart of milk in her hand, and "she looked to me like she tried to run away from something, or like she was scared." He also states that "there was an automobile coming down, and she saw that automobile come around her, and she immediately ducked out after that car passed her,' and on being asked where she went, stated that she went to the middle of the road, and that when she was struck she was just about the middle of the road. He states that defendant's automobile was being driven on the right side of the road, and that the decedent was "just about the middle of the road" when she was struck. The defendant states that he was driving his automobile at a speed of from twenty-five to thirty miles an hour, and that an automobile coming up from his rear blew for the road, and passed him on his left; that as it passed, he was watching the back end of that car, and "all at once I seen something in front of me, and I slapped the brakes on";

that what he saw in front of him was the decedent; that it appeared she came from the direction of the driveway; that he did not see her until "I was just about pretty near on top of her"; that she appeared to be running across the highway; that she came from his left; and was in about the center of the highway when she was struck. It is shown that the decedent was struck by the left front fender of the defendant's automobile and on her right side. The testimony of the two witnesses of foreign birth is somewhat disconnected, but, in substance, supports the defendant's statement as to how the accident occurred.

The plaintiff relies strongly on what he terms physical facts. We confess our inability to see that the case is controlled by any physical fact. Mention is made of the curves in, and the presence of double painted lines on, the highway, and it is argued that an automobile being driven at a speed of thirty miles an hour could not have negotiated the curve at the point of the accident without crossing to the left side of the road. The jury, immediately after a statement of the case and before the introduction of the testimony, had a view of the highway at the point of the accident, and as all of the surroundings were pointed out to them at the instance of counsel for both the plaintiff and defendant, we think it may be safely assumed that it was fully acquainted with all of the physical facts, and considered the same in arriving at its verdict.

It is, of course, apparent that two primary questions were submitted to the jury: (1) that of primary negligence on the part of the defendant; and (2), concurrent or contributory negligence on the part of plaintiff's decedent. Counsel for the plaintiff contends that there is no evidence of concurrent or contributory negligence. We think it might as well be said that there is no evidence of primary negligence, neither of which propositions has our support. Of course, if there was no primary negligence on the part of the defendant, there can be no recovery, and only in cases of primary negligence can there be such a thing as contributory negligence, because, without pri-

mary negligence, there is nothing to which the negligence of a plaintiff can contribute. This proposition is so well settled that it needs no further comment. There is some evidence of defendant's negligence in that some witnesses testify that he was driving on the left side of the road, which, unexplained, in most circumstances, may be considered negligence. Clearly, if plaintiff's decedent, without looking for approaching traffic, attempted to cross the highway in front of an approaching automobile, she was guilty of contributory negligence, and there is evidence tending to show that she did so. We think, therefore, that there was ample evidence introduced by both the plaintiff and the defendant to raise the question of primary, concurrent and contributory negligence. The evidence may be said to be conflicting as to certain vital factual points. The jury passed upon that conflict and in favor of the defendant. On the factual question involved, we would not be warranted in disturbing the jury verdict. In making this holding, we do so upon the assumption that there were no errors in the admission of evidence, or in the giving of instructions.

As stated above, Richard J. Otte and Clyde Gatewood testified, in effect, that after the accident, the defendant stated, in explanation of the accident, that he had been crowded over to the left side of the road by a passing car, and in that situation struck plaintiff's decedent Gatewood says "When I first went down I asked him what he was doing on the other side of the road, and he said 'A car passed me and forced me over. A car passed on the other side and forced me over.'" Richard J. Otte says that he talked to the defendant and that he said: "Are you the man that drove this car that hit and killed my wife, and he says 'Yes sir', and I says * * * how in the world did it happen', and he said that 'there was a car crowded me off the left side of the road over here and when that car passed, why, she was there, and I hit her.'" The defendant denies having made these statements. He did, however, make a statement of how the accident occurred to a member of the Department of Public Safety. That statement,

for obvious reasons, was not introduced in evidence, but upon examination of the officer to whom the statement was made, this question was asked: "Did he (meaning the defendant), in your presence, at any time that evening, make any statement which was inconsistent with the written statement that you have?" to which he replied "No sir." The question was objected to, and the overruling of such objection is asserted as error. We think the question was improper, but inasmuch as it is confined to statements made in his presence, and is not even indirectly contradictory of the two witnesses who testified as to the defendant's statements, and the nature of the statement made to the police officer not being known, we cannot say that the ruling of the court on the point was prejudicial to the plaintiff, and may, therefore, be termed as harmless error.

The plaintiff contends that there is error in each of three instructions given to the jury at the instance of the defendant. The first is instruction No. 5, which is to the effect that negligence is the doing of an act which a reasonably prudent person in the same or similar circumstances would not do, or the omission to do an act which a reasonably prudent person in the same or similar circumstances would have done. We see no fault in this instruction, for if, in a given situation, a person acts with reasonable prudence, he cannot be said to be guilty of a negligent act. Instruction No. 10 merely tells the jury that if they found from the evidence that both the plaintiff's decedent and the defendant were guilty of negligence, and that the same was concurrent and cooperate to bring about the death of the decedent, then the verdict of the jury should be in favor of the defendant. The objection to this instruction is that there is no evidence of concurrent negligence. We think there is evidence tending to show concurrent negligence. In cases such as this, it is usually referred to as contributory negligence, and while it has been sought to draw some distinction between contributory, concurrent and cooperating negligence, it is difficult to see such alleged distinction because, for the

doctrine of contributory negligence to apply, there must be a concurrence of negligence on the part of both the plaintiff and the defendant.

Instruction No. 11, reads as follows:

> "The court instructs the jury that if you find from the evidence in this case, that the deceased Mamie Otte, at the time of or immediately before the accident in question in this case, was guilty of any negligence which in whole or in part, or to any degree contributed to her death, then your verdict must be for the defendant."

It is contended that the language "or to any degree contributed to her death", makes this instruction bad. This contention raises a serious question. In *Carrico v. West Virginia C. & P. Railway Co.*, 39 W. Va. 86, 19 S. E. 571, 24 L. R. A. 50, this Court held:

> "To debar a plaintiff from recovery of damages for an injury from negligence, his negligence must be the proximate cause of the injury. When both parties are chargeable with negligence, the plaintiff can not recover if his negligence contributed in any degree to his injury; but, if it did not contribute to it in any degree, he may recover, his negligence not then being contributory, because not the proximate cause of the injury, but only remote from it, or collateral to it; and the defendant's negligence is in such case the proximate cause of the injury."

In discussing the point, Judge Brannon, speaking for the Court, said:

> "By proximate cause the law does not here refer to the degree or extent of the influence of the negligence in the production of the injury, but to its relation or connection with that injury in point of cause—its causal relation. Consequently, when the plaintiff's negligence in any degree helps in causing that injury, though the defendant's negligence also helps, we set off the negligence of the one against the negligence of the other as equal, and tell the plaintiff he can not recover, because we do not apply the rule of

comparative negligence in this state, by apportioning between the plaintiff and defendant the effect of the negligence of each one in producing the injury and finding in favor of the less negligent."

That courts will not undertake to balance the negligence of the respective parties to determine which is most at fault, see cases cited in 7 Digest Virginia and West Virginia cases, page 660. On the strength of the *Carrico* case, it has been held that "Contributory negligence is defensive. He who would rely on it to defeat recovery must prove, by a preponderance of the evidence, the fact of negligence, and that it was the proximate cause of the injury." *Carnefix* v. *Railroad Co.*, 73 W. Va. 534, 82 S. E. 219; *Pierce* v. *B. & O. Railroad Co.*, 99 W. Va. 313, 128 S. E. 832; *Coleman* v. *Norfolk & Western Railway Co.*, 100 W. Va. 679, 131 S. E. 563. It is obvious that the instruction under consideration did not tell the jury that contributory negligence of the plaintiff's decedent, if any, such as would bar recovery, was such negligence as in some degree contributed to the proximate cause of her death, and, to that extent, we think the instruction falls short of the requirements under our decisions, had there been a situation from which a jury might have been warranted in concluding that the negligence of plaintiff's decedent did not proximately contribute to her injury and death. In this case, however, no such contention could have been reasonably made. If plaintiff's decedent was in fact guilty of contributory negligence in attempting to cross the highway in front of defendant's automobile, it is manifest that her negligence contributed to her injury and death to the same extent and degree as any act on the part of the defendant in negligently operating his automobile. We could not approve of this instruction in a case where there would be any reasonable doubt as to whether the negligence of the plaintiff contributed to the proximate cause of a plaintiff's injury, but, in the circumstances of this case, we do not think it was prejudicial error to give the instruction in the form in which it was given. We could

not sustain a verdict in favor of the plaintiff, based alone upon the theory that the acts of the plaintiff's decedent, as shown by the evidence, did not contribute to the proximate cause of her injury and death. That being true, we would scarcely be justified in holding that the failure to instruct the jury on that particular point is prejudicial error.

We are, therefore, of the opinion that there was no error in the judgment of the Circuit Court of Marshall County, and the same is affirmed.

*Affirmed.*