90 S.E.2d 348 (1955)
Leon McMICKEN
v.
James E. PROVINCE.
No. 10740.
Supreme Court of Appeals of West Virginia.
Submitted September 14, 1955.
Decided November 8, 1955.
Concurring Opinion December 10, 1955.
*349 Kay, Casto & Chaney, Robert H. C. Kay, Charleston, William H. Rardin, Point Pleasant, for plaintiff in error.
D. J. Savage, Charleston, S. D. Little-page, Point Pleasant, for defendant in error.
GIVEN, Judge.
The plaintiff, Leon McMicken, obtained a verdict against the defendant, James E. Province, in the Circuit Court of Mason County for $5,000, for personal injuries and for damages to her automobile, alleged to have resulted from negligence of defendant in the operation of his automobile. The trial court overruled the motion of defendant to set aside the verdict and grant him a new trial, and entered judgment against defendant on the verdict. This Court granted a writ of error and supersedeas.
*350 The accident occurred June 29, 1953, about 5:00 or 5:30 o'clock p.m., on State Route 17, approximately eight miles east of Point Pleasant. The road, at the point and at the time of the accident, was dry, and the day clear. Plaintiff, alone in her 1949 custom, four door sedan, six cylinder DeSoto automobile, was driving west from Charleston toward Point Pleasant, and defendant was driving his Buick automobile in the same direction, west, with two passengers, Johnson in the front seat and Denny in the rear seat. While defendant was attempting to pass the automobile of plaintiff, or immediately after he had passed it, the automobile of plaintiff left the hard surface of the highway, ran on to the shoulder thereof, to the right of plaintiff, for approximately three hundred and fifty feet, striking a telephone pole at approximately one hundred feet, and a tree at approximately three hundred and fifty feet. The paved portion of the road, at the point of the accident and for some distance east thereof, is twenty feet in width, with a fifteen foot shoulder on the northerly side, the side to the right of plaintiff, and a twelve foot shoulder on the southerly side, the side to the left of defendant. The highway is practically straight, and practically level, for approximately one half mile east of the point of the accident, except that there is a slight rise beginning at an approximate distance of five hundred feet east of the point of the accident and continuing to near the tree struck by plaintiff's automobile.
To the right of one traveling toward Point Pleasant, on the straight portion of the road, and at a distance greater than eighteen hundred feet east of the point of the accident, is located a business building designated in the record as the "Snack Shop". Just west of the Snack Shop is a public school building; just west of the school building is the Dow residence; still further west, and approximately six hundred feet east from the point of the accident, a private road, serving a part of the Williamson farm, intersects State Route 17, at which intersection defendant's witness Dow was seated on a farm tractor at the time of the accident. On the southerly side of State Route 17, opposite the above mentioned intersection, is the Williamson residence, and on the southerly side of State Route 17, east of the Williamson residence, is the Beech Hill Church.
Plaintiff, a married woman forty nine years of age, a former resident of West Virginia, but at the time of the accident a resident of Chicago, was returning to her home from Charleston at the time of the accident. She testified that while she was driving at a speed of forty five or fifty miles per hour, defendant passed her at a "high rate of speed, and he went on for a piece and he slowed down and ran over to the shoulder and slowed down to the left side of the shoulder, and when I got to the point he was a little ahead of me he began to cut it and swerved across the highway in front of me, and then would go to the left shoulder and when I would get there he would cut again, and he continued to do that for about a quarter of a mile down the highway. The thing I remember is a jar or bump and then I don't remember anything until they were waking me up, at least until I came to", and that defendant cut his automobile in front of her "say ten or twelve times" in the quarter of a mile. She further testified to the effect that she did not hear defendant sound his horn when he started to pass her; that she did not speed up her own automobile; that she "didn't attempt to stop. I didn't know what he was up to, and I said, I will keep rolling. I didn't know what he was up to"; and that she didn't know why he was "molesting" her.
Near the time of the accident, Lee Meadows, driving a large truck, and his helper, James M. Day, traveling east, were approaching the point on the highway where the accident occurred. They were called as witnesses by plaintiff. Meadows testified to the effect that when he first observed the automobiles of plaintiff and defendant they were "between 350 and 400 yards" from him; that the automobiles "were side by side and the Buick was attempting to pass or was out in the left *351 lane to pass the DeSoto"; that the "Buick turned towards the DeSoto * * * and * * * it looked to me like he hit the car"; and that the Buick automobile was "at least 200 yards or better" from the truck he was driving when it passed the DeSoto and got into the right lane. The witness Day testified to the effect that when he first observed the Buick and DeSoto automobiles they were side by side; that the Buick "cut toward the DeSoto, the DeSoto left the road, and the Buick continued up the road"; that he believed, but could not be sure, that the Buick hit the DeSoto; and that the speed of the two automobiles, in his opinion, was "between 50 and 60 miles an hour".
Defendant testified to the effect that below the Snack Shop he caught up with plaintiff's automobile, sounded his horn and attempted to pass; that plaintiff "speeded her car up. I kind of slowed down and so did she. I blowed my horn and started around again and I kept on continuing and she kept speeding up, and I did too until I got around, and about the time I got even with her there was a little vibration on my car, but then I went around her * * *"; that when he sounded his horn to pass he was traveling fifty miles per hour; and that when his automobile passed the automobile of plaintiff he was traveling about seventy five miles per hour. On cross-examination, he admitted that he had stated to the member of the Department of Public Safety who investigated the accident that he was driving at the rate of sixty miles per hour when he started around plaintiff's automobile. Defendant's witness Johnson, who was riding in the front seat with defendant, testified to the effect that defendant was traveling "between fifty and fifty-five miles" per hour prior to the time when he caught up with plaintiff's automobile; that when he caught up with plaintiff's automobile he sounded "his horn and started around" her; that as he started around she "speeded up" her automobile; that he dropped back "momentarily and started around her again and sounded his horn, and we went down the road side by side"; that defendant passed plaintiff on the second attempt; and that the Buick was about one hundred yards from the truck when the Buick got back into its right lane. The witness Denny, who was riding in the rear seat of defendant's automobile, testified to the effect that defendant "pulled up behind this DeSoto and sounded the horn, and started swinging out to his left to go around, and the DeSoto seemed as though it pulled up a little faster, or he was looking at the road and didn't want to go around, and he swung a little behind, not clear back, and sounded the horn again and he went to go around and the woman sped the DeSoto up, and they ran for a quarter of a mile neck and neck"; that at the time defendant started to pass plaintiff the DeSoto was traveling" around sixty miles an hour, maybe better than that"; and that defendant was driving between seventy and eighty miles per hour "at the time he went around her". These two witnesses expressed opinions that the two automobiles did not touch while the Buick was passing, but on rebuttal the witnesses Meadows and Day testified, in effect, that Johnson, after he had returned with defendant to the point of the accident, stated that he, Johnson, had told the defendant, after he had passed the DeSoto, "that he had hit this woman and he better stop and go back".
The defendant's witness Dow, who was seated on the farm tractor at the time, as above pointed out, observed the automobiles of plaintiff and defendant approaching from the east from a point near the Dow residence, a distance of approximately eighteen hundred feet. He testified that at that distance from him the Buick had "pulled to the left of the center to pass another car"; that the two automobiles came toward him "side by side"; that they were "about even" when they passed him and were "doing 75" miles per hour; that he "thought it was a good race so I watched it"; that he could not tell whether the Buick touched the DeSoto; and that the DeSoto left the paved surface at an angle *352 of about forty five degrees and traveled approximately three hundred and fifty feet to where it struck the tree.
The question posed by the evidence detailed is whether the contributory negligence of plaintiff is so clearly established that we must say, as a matter of law, that plaintiff cannot recover under the facts disclosed by the present record. That defendant was negligent, culpably so, cannot be doubted. The evidence of his own witnesses shows that he was operating his own automobile at a high rate of speed, seventy five or eighty miles per hour, when passing plaintiff's automobile, and that he drove his automobile into the side of her automobile, or very close thereto, so as to force her from the paved portion of the highway, notwithstanding she was at all times on her right side of the center line thereof, and notwithstanding the paved portion of the roadway to defendant's left of the center line was ten feet in width, with a shoulder of approximately twelve feet. Our cases all hold, however, that plaintiff cannot recover if her own negligence contributed proximately to the accident from which the injuries occurred. Casto v. Charleston Transit Co., 120 W.Va. 676, 200 S.E. 841. Courts do not attempt to balance the negligence of a plaintiff against that of a defendant for the purpose of permitting any recovery pro tanto. See Otte v. Miller, 125 W.Va. 317, 24 S.E.2d 90. "The general rule in regard to contributory negligence is that, if the negligence be mutual on the part of the plaintiff and defendant, there can be no recovery.' Point 2, Syllabus, Overby v. Chesapeake & Ohio Railway Co., 37 W.Va. 524, 16 S.E. 813. While contributory negligence may appear from the evidence of a plaintiff, the burden of proving it rests upon a defendant. H. B. Agsten & Sons, Inc., v. United Fuel Gas Co., 117 W.Va. 515, 186 S.E. 126. Ordinarily, questions of proof of the existence of contributory negligence are questions of fact for jury determination. But in a case where the evidence is such that reasonable men can draw only one conclusion therefrom, the question becomes one of law for the courts. Yuncke v. Welker, 128 W.Va. 299, 36 S.E.2d 410. "If the evidence is not sufficient to support a verdict for the plaintiff, or is such that the court would have to set aside the verdict if one were found for the plaintiff, the court should, on motion of the defendant, direct a verdict for the defendant." Point 3, Syllabus, Ice v. County Court of Doddridge County, 77 W.Va. 152, 87 S.E. 75, 76.
Appraising the evidence in the light of the holdings in the cases cited, we are clearly of the opinion that contributory negligence of plaintiff bars any recovery by her, in so far as the present record is concerned. From the evidence, there can be no substantial doubt that plaintiff and defendant engaged in the highly dangerous, if not depraved, action of racing their automobiles on a public highway. The evidence definitely shows that defendant started to pass the automobile of plaintiff near the Dow residence, eighteen hundred feet east of the farm tractor; that both automobiles traveled that distance, plus the distance up the rise in the highway, several hundred feet, before plaintiff's car left the paved surface of the highway, and that plaintiff's automobile was practically even with the automobile of defendant at the time defendant turned his automobile into the right hand lane. Plaintiff's own contention is that defendant's automobile struck her automobile at the time defendant turned into the right hand lane. Thus, it is certain that the two automobiles traveled the entire distance in approximately the same length of time and at the same rate of speed. There can be no substantial doubt, from the evidence, that such speed was excessive. Defendant admits, and the record otherwise establishes, that he was traveling seventy five miles per hour or more when he passed plaintiff, and she testified to the effect that he was driving at a high rate of speed. Moreover, plaintiff's automobile traveled approximately three hundred and fifty feet after it left the paved portion of the highway, striking the telephone pole before it hit the tree, *353 with sufficient force to demolish it. Is it not perfectly clear that if plaintiff had been driving her own automobile at a reasonable rate of speed, and had her automobile under control at the time defendant passed her, she could have made a safe stop before traveling the three hundred and fifty feet, keeping in mind that there was a fifteen foot shoulder on the right of her right hand ten foot lane of paved surface, and that she was traveling up a slight grade in the highway? We have not overlooked plaintiff's contentions as to feeling a "jar or bump" when defendant's automobile passed her, which rendered her incapable of driving; nor that defendant cut his automobile in front of her ten or twelve times within the distance the automobiles traveled after defendant first attempted to pass her; nor that she "kept rolling' because she didn't know what he was up to; nor that she feared defendant intended to "molest" her. In view of other facts in the case, such statements on her part are simply not credible. While there is conflict in the evidence as to whether defendant's automobile touched plaintiff's automobile in passing, there is no evidence of any striking of plaintiff's automobile with sufficient force to render the driver unconscious. After the accident occurred, the Buick was found to have no marks indicating any actual contact with plaintiff's automobile. The contention of plaintiff that defendant cut his automobile in front of her ten or twelve times, while traveling the distance from where he first started to pass her to where her automobile left the road, is simply impossible of belief, considering the distance traveled and the speed of the automobiles. No witness for plaintiff or defendant supports her in any such statement. Eyewitnesses who observed the cars while traveling the whole or part of the distance covered, say that they were traveling about "even" or "side by side". We are of the opinion that plaintiff could have had no reasonable fear of being "molested" by defendant. She was, at all times material, in sight of the Dow and Williamson dwellings, the Snack Shop and the witness Dow on the farm tractor, and on an open and much traveled highway, in the daytime. See Morris v. City of Wheeling, W.Va., 82 S.E.2d 536; Burgess v. Gilchrist, 123 W.Va. 727, 17 S.E.2d 804, 138 A.L.R. 676; Marshall v. Conrad, 118 W.Va. 321, 191 S.E. 553.
Plaintiff testified that she purchased the automobile which she was driving at the time of the accident about six months prior thereto, and that she paid therefor the sum of $1,395; that she had operated the automobile for the six months period and that it was practically destroyed by the accident and was sold for "junk" for the sum of $100. By another witness, plaintiff established that the "book price" of one of the two series of that make of automobile as of May 1953, was $1,175, and the "book value" of the other series, as of the same date, was $965. No other evidence was offered as to the market value or the condition of plaintiff's automobile. The trial court gave to the jury plaintiff's Instruction No. 3 as amended, which reads in part: "The Court instructs the jury that if under all the evidence and instructions of the court, you find for the plaintiff, you should allow her such sum of money, not to exceed $10,000.00, the amount sued for, as you believe from the evidence will compensate her reasonable for the loss of her automobile and for the injuries received * * *". Defendant's objection to the giving of the instruction now insisted upon was that "there is no basis upon which the jury can state with any degree of certainty the amount of loss of the automobile. There is some evidence that one series of DeSoto was so much, and another series this amount. There is no evidence of the condition of this particular automobile at the time immediately before the accident, there is no evidence as to what this particular automobile may have been worth, the witness merely testified as to what the blue book showed * * *".
In Stenger v. Hope Natural Gas Co., W.Va., 80 S.E.2d 889, 891, this Court held: "5. The measure of recovery for *354 property destroyed through negligence is the fair market value of the property at the time of destruction. The measure of recovery for negligent damage to property not destroyed, where the damage is of a permanent nature, is the diminution in the market value of the property by reason of the injury." In Biederman, Inc., v. Henderson, 115 W.Va. 374, 176 S.E. 433, this Court held: "3. Unless circumstances justifying a departure from it are shown, the rule for determining the amount of damages for injury to personal property is to subtract the fair market value of the property immediately after the injury from the fair market value thereof immediately before the injury, the remainder, plus necessary reasonable expenses incurred, being the damages." See Ripley v. C. I. Whitten Transfer Co., 135 W.Va. 419, 63 S.E.2d 626; H. B. Agsten & Sons, Inc., v. United Fuel Gas Co., 117 W.Va. 515, 186 S.E. 126; Tingler v. Lahti, 87 W.Va. 499, 105 S.E. 810. No evidence having been offered as to the market value of plaintiff's automobile before the accident, there existed no basis for any recovery as to damages done the automobile, and plaintiff's Instruction No. 3, quoted above, should not have been given. There was no evidence upon which a recovery of damages as to the automobile could have been based.
Defendant contends that the giving to the jury of plaintiff's Instruction No. 1, as amended, constituted prejudicial error. It reads: "The Court instructs the jury, that if you believe from a preponderance of the evidence that the plaintiff was driving her automobile on her side of the road in a lawful manner and the defendant in attempting to pass the automobile driven by the plaintiff struck the automobile of the plaintiff, while she was lawfully on her own side of the highway and caused her to lose control of her automobile so that it went off the highway and traveled out of control a distance of 300 to 350 feet where it struck a tree; and that if you further believe the accident would not have happened or the plaintiff would not have lost control of her automobile had it not been for the negligent action of the defendant in striking plaintiff's automobile then you should find for the plaintiff and award her such damages as in your opinion will reasonably compensate her for her damages and injuries not to exceed the sum of $10,000.00, the amount sued for." The objection to this instruction is that, being a binding instruction, it ignores the defense of contributory negligence.
We might dispose of the objection by pointing out that the evidence established contributory negligence of plaintiff as a matter of law, and that defendant's peremptory instruction should have been given. See Davis v. Chesapeake & Ohio Railway Co., 61 W.Va. 246, 56 S.E. 400, 9 L.R.A., N.S., 993. But in view of the possibility of a new trial of the case, the Court is of the opinion that it should briefly point out why we think the instruction is erroneous. Though plaintiff argues that the word "should", as "used in this instruction, does not make it a binding instruction as it is not the same as the mandatory word `shall' or `must' but more in conformity in natural understanding of persons with the word `may' * * *", we are of the view that as used in the instruction, the word "should" conveyed to the jury the meaning that if they believed, from a preponderance of the evidence, the facts recited, that the plaintiff was, without further consideration of any other matter by the jury, entitled to recover, and that the jury would be required, under the law, to return a verdict in favor of plaintiff. Perhaps the word "should", in some circumstances of context, could be given the force or meaning of the word "may", but, being the past tense of the word "shall", usually conveys the idea of a command. See Webster's New International Dictionary, Second Edition, should, shall.
A further suggestion has been made that the use, in the instruction, of the words "if you believe * * * the plaintiff was driving her own automobile on her own side of the road in a lawful manner * * *" sufficiently negatives contributory negligence. In Bragg v. C. I. Whitten Transfer Company, 125 W.Va. 722, 26 S.E.2d 217, 221, it was contended that the defense *355 of contributory negligence was negatived in an instruction by the use of " `* * * if you believe the plaintiff himself without negligence * * *". This Court, in the opinion, said: "We reject this contention. An instruction which directs a finding for a litigant should submit to the jury a complete factual hypothesis sufficient in itself to support the conclusion which the jury is conditionally authorized to reach. In other words, a binding instruction should be so drawn as to need no aid or supplement from another. Resort to other instructions to supply the necessary factual premise for the authorized conclusion generally results in confusing and misleading the jury. The portion of the instruction relied on as sufficient mention of the defense of contributory negligence is abstract, in that it ignores the rate of speed of the motorcycle, the duty of the operator to observe the road ahead of him, and to take precautions for his safety. The negation of contributory negligence is not specific. Negligence is a relative matter. An act or course of conduct may be gross carelessness in one instance and lack that quality in another. The instruction lacks completeness, requiring the jury to have recourse to other instructions for ascertainment of facts from which contributory negligence may be inferred. In our opinion, the instruction is erroneous and the error is not obviated by specific facts recited in other instructions given." See State v. Barker, 128 W.Va. 744, 38 S.E. 2d 346; State v. Lawson, 128 W.Va. 136, 36 S.E.2d 26; Kirk v. Commonwealth, 186 Va. 839, 44 S.E.2d 409.
Since the instruction last quoted is found to be a binding one, and does not negative contributory negligence, we necessarily hold that the giving thereof constituted prejudicial error. It is true that other instructions given to the jury covered questions of contributory negligence, but prejudicial error created by the giving of a bad instruction is not cured by the giving of a good one relating to the same matter. "1. `Ordinarily, when contributory negligence of the plaintiff is relied on as a defense, it is prejudicial error to give for the plaintiff an instruction which directs the jury to find for the plaintiff if certain recited facts are believed by the jury from the evidence, but which instruction does not specifically negative contributory negligence on the part of the plaintiff. The error involved in the giving of such erroneous instruction is not corrected by the giving to the jury of other instructions covering contributory negligence.' Syllabus, Nichols v. Raleigh Wyoming Mining Co., 113 W.Va. 631, 169 S.E. 451." Payne v. The Virginian Railway Co., 131 W.Va. 767, 51 S.E.2d 514. See Skaff v. Dodd, 130 W.Va. 540, 44 S.E.2d 621; Bragg v. C. I. Whitten Transfer Co., supra.
The judgment of the Circuit Court of Mason County is reversed, the verdict of the jury set aside, and the case remanded for a new trial.
Reversed; verdict set aside; new trial awarded.
RILEY, J., did not participate in the consideration or decision of this case.
BROWNING, Judge (concurring).
I concur in the decision of this Court that there was no competent evidence upon which a recovery of damages as to the plaintiff's automobile could have been based; that it was reversible error for the court to give to the jury Plaintiff's Instruction No. 1, as amended; and agree completely with all that has been said with reference to those questions in the Court's opinion.
I disagree, however, with the Court's holding that the evidence in this record shows that the plaintiff was guilty of contributory negligence, as a matter of law. The testimony of the witnesses upon that question has been fairly and fully stated in the Court's opinion. It has long been established by this Court and others that: "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, *356 must be considered, and those facts, which the jury might properly find under the evidence, assumed as true." Pt. 1 Syl., Butcher v. Stull, W.Va., 82 S.E.2d 278, 279. When the verdict of a jury is buttressed by the approval of the trial judge, who, like the jury, had listened to the evidence, and observed the demeanor of the witnesses upon the witness stand, it is further strengthened. If reasonable men may fairly differ as to the facts, or as to the inference to be drawn from them, the issue is generally for the jury, and not for the trial or appellate court. It is my opinion that the evidence in this record presented an issue for jury determination upon conflicting testimony as to whether the plaintiff was guilty of such negligence that it contributed proximately to the crash of her automobile, which resulted in her injuries and damage to her vehicle. Also, the weight of evidence and credibility of witnesses are matters peculiarly for the jury. The plaintiff clearly stated that she was driving at a rate of speed of 45 to 50 miles an hour and was in her lane of traffic before and at the time when the defendant cut across the center line of the highway in front of her, and "hit me". She further stated that: "* * * All I remember is a thump or jar, and the next thing I know I came to over on the bank * * *." She is supported in her testimony, as to why her automobile was forced to leave the road, by the testimony of both Meadows and Day, who were approaching the scene in the truck. Meadows stated that the defendant's automobile was "driving fast", "better than 55", and that "* * * from where I was it looked to me like he hit the car, I don't know what part. But it looked like the Buick hit the Desoto, and the Buick cut in the right lane and passed me * * *." This witness further stated in answer to a question upon cross-examination, as to why the plaintiff could not have stopped her automobile after she left the highway, by saying: "I don't think she could have stopped before she got off the bank." "It looked like she was scared and excited, * * *." Day's testimony was substantially the same as that of Meadows, and when asked whether the cars hit, answered: "In my opinion I think they did." This witness, as did all of the others, testified that: "The DeSoto was on its side of the highway."
It is true, as stated in the majority opinion, that the testimony of the plaintiff that defendant cut his automobile in front of her automobile ten or twelve times within a distance of a quarter of a mile might be incredible, but, after making that specific statement as to the number of times that this occurred, counsel asked this further question upon cross-examination, and the plaintiff made the following answer: Q: "He did that ten or twelve times in that quarter of a mile?"; A: "Quite a number of times." I think the jury would have been justified in concluding that the plaintiff may have exaggerated in placing the figure at "ten or twelve times", but had a right also to conclude that this was only an estimate, and when counsel attempted to get her to repeat that statement, she changed it to "Quite a number of times." Furthermore, it is my opinion that it was for the jury to determine whether the conduct of the plaintiff in continuing to drive her automobile at a lawful rate of speed, and at all times fully in her traffic lane, constituted such negligence as would bar her recovery.
The plaintiff was a woman driving alone on a long journey from Charleston, West Virginia to Chicago, Illinois, and this accident occurred in a relatively sparsely settled area between the towns of Winfield and Point Pleasant, West Virginia. The plaintiff testified that: "I had the impression he was trying to stop me."; "* * * I didn't attempt to stop. I didn't know what he was up to, and I said, I will keep rolling. I didn't know what he was up to." Upon cross-examination, she was asked this further question, and made this answer: Q: "He had no ill-will toward you, did he?"; A: "But why was he molesting me? That is why I didn't stop."
It is my opinion that reasonable men could reach more than one conclusion from *357 the testimony in this case as to whether the actions of the plaintiff were such that she was negligent, and that her negligence contributed proximately to the wrecking of her automobile, and injury to her person. To hold otherwise is, in my opinion, invading the province of the jury, and I would not do so. On what has been said herein, it follows that I would reverse the judgment of the Circuit Court of Mason County, and remand this case for a new trial, as the majority of the Court has held, but I would not foreclose the plaintiff's right to have another jury, properly instructed, and with proper evidence before it as to damages to the automobile, determine from the same evidence that was presented at the first trial, whether the plaintiff was guilty of negligence which contributed proximately to her injury.