667 S.E.2d 867

John S. GUIDO, Defendant
Below, Appellant,

v.

Kendra M. GUIDO (Now Gray),
Plaintiff Below, Appellee.

No. 33599.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 13, 2008.

Decided June 18, 2008.

PER CURIAM.

The instant action is before this Court upon the appeal of John S. Guido [hereinafter "Appellant"] from an April 12, 2007, order entered by the Circuit Court of Marion County denying Appellant's Motion for Reinstatement of Appeal, and in the Alternative, Motion for Reconsideration due to Appellant's failure to serve his petition upon Kendra Guido and the Bureau of Child Support Enforcement ["hereinafter BCSE"] as required by West Virginia Code § 51–2A–11 (b) (2001). Herein, the Appellant alleges that the circuit court erred in dismissing his petition for appeal because his failure to complete the certificate of service attached to his timely filed petition was the product of an honest mistake and did not result in prejudice to any of the parties involved. The Appellee alleges that because the petition was improperly filed, the circuit court was deprived of jurisdiction and thus, the circuit court did not err in dismissing the appeal. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the April 12, 2007, order of the Circuit Court of Marion County is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On December 20, 2006, the Family Court of Marion County issued a decretal judgment order awarding judgment against the Appellant for arrearages in his obligation to pay child support to his former wife, Kendra M. Guido (now Gray), in the total amount of $22.767.17.[1] Appellant timely filed a petition for appeal from that order on January 2, 2007, which was referred to the Circuit Court of Marion County. On January 22, 2007, the circuit court entered an order denying Appellant's petition for appeal on the grounds that the certificate of service attached to the Ap-

Patrick F. Roche, Esq., Fairmont, WV, for Appellant.

Kimberly D. Bentley, Esq., Bureau of Child Support Enforcement, Charleston, WV, for Appellee.

---

1. According to the Bureau of Child Support Enforcement, several significant events in the very long history of this case likely had some influence on the determination of the circuit court. Below, the Appellant had been found guilty of false swearing at a child support hearing after he provided false testimony to the court regarding the amount of income he was receiving and it had been determined that he, with his parents' assistance, had been hiding child support monies. Additionally, contempt orders resulting from nonpayment had been entered prior to the decretal judgment order.

pellant's petition had not been completed and there was no other indication that the Appellant had served his former wife, Kendra Guido (now Gray), or the Bureau of Child Support Enforcement with a copy of the petition as required by West Virginia Code § 51–2A–11(b).

On February 5, 2007, Appellant filed "Defendant's Motion for Reinstatement of Appeal, or in the Alternative, Motion for Reconsideration", requesting that the circuit court reinstate his appeal of the family court's final decretal judgment order. Appellant attached sworn affidavits from himself and his mother, Josephine Guido, setting forth the facts regarding the circumstances that had resulted in non-completion of the required certificate of service.[2] A hearing set on the motion was scheduled for April 23, 2007. However, on April 12, 2007, prior to the date scheduled for hearing, the circuit court entered an order denying Appellant's motion on the grounds that upon review of the entire court file, the Appellant was not entitled to the relief sought, and thus no hearing was required. It is from that order that Appellant now appeals.

## II.

### STANDARD OF REVIEW

■ Our resolution of the case *sub judice* turns upon our interpretation and applica-

tion of West Virginia Code § 51–2A–11(b). When faced with a question of statutory interpretation, we apply a plenary review. In other words, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie AL.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Mindful of this standard, we proceed to consider the arguments of the parties.

## III.

### DISCUSSION

■ West Virginia Code § 51–2A–11(a) provides that any party may file a petition for appeal of a final order of a family court judge with the circuit court within thirty days following the entry of the final order. West Virginia Code § 51–2A–11 (b) then provides that "[a] petition for appeal of a final order of a family court shall be filed in the office of the Clerk of the Circuit Court. At the time of filing the petition, a copy of the petition for appeal **must** be served on all parties to the proceeding in the same manner as pleadings subsequent to an original complaint are served under Rule 5 of the Rules of Civil Procedure." [3] (Emphasis added).

In requesting relief, Appellant first contends that his failure to serve the parties

---

**2.** The Appellant's affidavit stated the following:

"COMES NOW, JOHN SAMUEL GUIDO, and having been duly sworn and deposed, states as follows:

1. That my name is John Samuel Guido, I am the Defendant in this action, I am eighteen years or older, and the following is based on my own personal knowledge.
2. That on January 2, 2007, based on the information that I gave her, my mother's friend, Karen Gribbean, typed up the original of my Petition for Appeal of Family Court Judge David P. Born's Final Order. After Mrs. Gribbean had finished typing my Petition for Appeal, and all the necessary copies of the Petition for Appeal had been made, I went with my mother, Josephine Guido, to file my Appeal in the Clerk of the Circuit Court's office at the Marion County Courthouse.
3. That when my mother and I got to the Clerk's office, we spoke to the Circuit Clerk, Monica Sollars, who asked me to verify my Petition for Appeal and then notarized my signature. Sollars also asked for Kendra Gray's

address and told me that she would fax a copy of my Petition for Appeal to the Supreme Court.
4. That from talking to Ms. Sollars, I believed that I did not have to take any further action for my Appeal to be official. And, I also believed that the Clerk's office would make sure that all the Defendants got a copy of my Petition and that either Ms. Sollars or another official was going to fill out Certificate of Service on the Petition.
5. That had I believed otherwise, I would have completed the Certificate of Service myself and made sure that Kendra Gray and Mr. Sellaro of Bureau of Child Support Enforcement got copies.
. . ."

**3.** Rule 5(a) of the West Virginia Rules of Civil Procedure states:

Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper

with a copy of the petition for appeal equated to a mere failure to comply with the requirements of Rule 5(a) of the West Virginia Rules of Civil Procedure, and thus, noncompliance with a rule of civil procedure cannot, by itself, act to deprive a court of jurisdiction under *Alan's Dept. Store v. Conaty,* 162 W.Va. 893, 898, 253 S.E.2d 522, 526 (1979). As support for his argument, Appellant cites to *Bias v. Workers' Compensation Commissioner,* 181 W.Va. 188, 381 S.E.2d 743 (1989), and *Talkington v. Barnhart,* 164 W.Va. 488, 264 S.E.2d 450 (1980), contending that a party should not be denied adjudication of his claim for a mere technical violation of a rule because, to do so, would be contrary to the interests of justice. We find both of these cases, which concern technical violations of Rules of Civil Procedure, to be wholly distinguishable and inapplicable to the facts of the instant case.

In *Bias,* our decision concerned a dismissal of a claimant's appeal where counsel failed to file a brief with an accompanying certificate of service as required by Rule 4 of the Workers Compensation Appeal Board. 181 W.Va. 188, 381 S.E.2d 743. Additionally, in *Talkington,* our decision concerned a dismissal due to a failure to comply with Rule 80(c) of the West Virginia Rules of Civil Procedure, requiring notification to the parties that the trial transcript had been made a part of the record. 164 W.Va. 488, 264 S.E.2d 450. In the case *sub judice,* Appellant failed to comply with a statutory mandate, the result of which was not a mere technical violation. Qualitatively, that which is required to perfect an appeal is more legally significant than what may be required with respect to the service of a brief or the giving of notice of the filing of a transcript, as in *Bias* and *Talkington.* The failure to serve a party with a petition for appeal prejudicially affects the substantive rights of the opposing party and prohibits them from knowing that such pleading has been filed and from presenting their defenses.

Seemingly admitting that the above-noted authority concerns only technical violations of our Rules of Civil Procedure, Appellant then urges us, in the alternative, to apply the analysis utilized in *West Virginia Human Rights Commission v. Garretson,* 196 W.Va. 118, 468 S.E.2d 733 (1996), wherein we considered the appeal of the dismissal of a Fair Housing Act claim which was timely filed, but untimely removed to circuit court. In *Garretson,* the lower court held that the failure to timely remove the case deprived it of jurisdiction. On appeal, this Court held that the outcome turned on whether the statute at issue, West Virginia Code § 5–11A–13(*o*)(1), was directory or mandatory in nature. *Id.* at 740. Ultimately, this Court reversed the dismissal, concluding that because the statute was directory in nature, and no prejudice resulted to the parties, dismissal was inappropriate. *Id.* Applying that analysis herein, Appellant alleges that the statute at issue before us is directory, and not mandatory, in nature, and thus, because no prejudice as resulted to the parties, dismissal was in error. We simply disagree. The statute at issue before us, West Virginia Code § 51–2A–11(b), is unquestionably mandatory in nature.[4]

"The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). We look next to the specific language used in the statute. *State ex rel. McGraw v. Combs Servs.,* 206 W.Va. 512, 518, 526 S.E.2d 34, 40

relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. For purposes of this rule, guardians ad litem are considered parties. No service need be made on parties in default for failure to appear except the pleadings asserting new or additional claims for relief against them shall be served upon them in a manner provided for service of summons in Rule 4.
W.Va. R.C.P. 5(a)(2007).

4. The fact that the Appellant appeared *pro se* in this matter is of no moment. According to the record, the parties have been engaged in litigation for over a decade, and most, if not all, of the pleadings were filed by the Appellant himself. Accordingly, Appellant should have sufficient experience to know that pleadings must be served upon the parties.

(1999). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). Additionally, we accord words used in a legislative enactment their common, ordinary meaning. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connotation in which they are used.'" Syl. Pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941)(overruled on other grounds by *Lee–Norse Company v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982)).

West Virginia Code § 51–2A–11(b) specifically uses the word "must" with respect to the act of service of a petition for appeal. "Typically, the word 'must' is afforded a mandatory connotation." *Ashby v. City of Fairmont*, 216 W.Va. 527, 532, 607 S.E.2d 856, 861 (2004)(*citing McMicken v. Province*, 141 W.Va. 273, 284, 90 S.E.2d 348, 355 (1955), construing "must" as a mandatory word). Use of the word "must" does not imply an element of discretion. *Motto v. CSX Transportation*, 220 W.Va. 412, 418, 647 S.E.2d 848, 854 (2007). Thus, when a statute contains a mandatory term such as "must", we construe that word as requiring the specified action to be taken. *See, e.g., State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999).

Applying the clear and unambiguous language of West Virginia Code § 51–2A–11(b) to the facts on record before us, is it evident that the Appellant did not comply with the requirements of the statute because service of a copy of the Appellant's petition for appeal on Kendra Guido (now Gray) and the BCSE was mandatory. Failure to comply with the statute's mandatory procedure is fatal to an appeal and deprives the circuit court of jurisdiction. Accordingly, because the circuit court was without jurisdiction to proceed to the merits of the case, we find that his petition for appeal was properly denied.

## IV.

## CONCLUSION

For these reasons, the Circuit Court of Marion County did not err in denying the Appellant's petition for appeal. Accordingly, the circuit court's order of April 12, 2007, is hereby affirmed.

**Affirmed.**

JUSTICE ALBRIGHT and JUSTICE STARCHER dissent and reserve the right to file dissenting opinions.

ALBRIGHT, Justice, dissenting.

I respectfully dissent from the majority opinion. The Appellant's request to reinstate his appeal of the family court's order should have been granted. In denying the motion to reinstate, the circuit court found that the Appellant, acting pro se, had failed to satisfy the requirements of West Virginia Code § 51–2A–11(b) regarding a certificate of service attached to the Petition for Appeal. In this appeal, the Appellant maintains that his failure to complete the certificate of service was the consequence of an honest mistake and did not result in any actual prejudice to any other party. The majority affirms the circuit court's decision, reasoning that the absence of the certificate of service invalidated the petition and deprived the circuit court of its jurisdiction.

This Court frequently encounters claims that technical violations of rules or statutes invalidate claims or deprive appellate courts of jurisdiction. Consistency regarding the evaluations and results of such challenges has been deplorably lacking. This Court has most generally framed the paradigm for evaluation upon whether the violated statute was directive or mandatory in nature. *West Virginia Human Rights Commn. v. Garretson*, 196 W.Va. 118, 468 S.E.2d 733 (1996). However, this Court has repeatedly admitted that there is no "authoritative checklist" for determining whether a statute is directive or mandatory. *Id.* at 126, 468 S.E.2d at 741.[1]

---

1. "While a wide array of factors may be suggestive [in a determination of whether a statute is directive or mandatory], typically no single word in itself necessarily provides the answer. Yet,

Thus, the analysis has become cloaked with the troubling aura of subjectivity.

In *Garretson,* this Court analyzed West Virginia Code § 5–11A–13(*o*)(1) (1992), providing as follows: "If an election is made under subsection (a) of this section, the commission *shall* authorize, and not later than thirty days after the election is made the Attorney General *shall* commence and maintain, a civil action...." (emphasis supplied). This Court found such statute directive rather than mandatory. Thus, the *Garretson* Court found that the violation of the statute did not affect jurisdiction to entertain an underlying housing discrimination claim, as long as the delay was not prejudicial to the rights of a party.[2] The *Garretson* Court also noted that "[t]he purpose of the time limit is to allow the parties an opportunity to gather evidence while facts are still fresh and to motivate parties to diligently pursue their claims." 196 W.Va. at 122 n. 3, 468 S.E.2d at 737 n. 3.

In the present case, the articulation of the statute at issue is very similar to the *Garretson* statute. The statute in this case utilizes the term "must" and, like the *Garretson* statute, also fails to specify a particular consequence of the failure to adhere to the provision, thereby creating a presumption that the statute is directive. *See Garretson,* 196 W.Va. at 126, 468 S.E.2d at 741. Yet, the majority in this case renders an entirely different ultimate conclusion, and the Appellant loses his day in court.

While not relating to the impact of a statutory provision, this Court's decision regarding the nature of a magistrate court rule in *Frank P. Bush, Jr. & Associates, L.C. v. Hammer,* 215 W.Va. 599, 600 S.E.2d 311 (2004), is also instructive. In appealing a magistrate court judgment, a timely filing of an appeal bond on a form prepared by this Court was deemed sufficient to constitute the required "notice of appeal" for purposes of the rule requiring a notice of appeal to be filed. The *Hammer* scenario is also analogous to the present case to the extent that the appellant in that case, acting pro se, relied upon information provided to him by magistrate court personnel that no additional written documents were necessary to file his appeal. The Hammer Court relied upon this Court's prior decision in *Wolfe v. Welton,* 210 W.Va. 563, 558 S.E.2d 363 (2001). In that case, this Court stated that "upon the filing of the bond and payment to the magistrate court of the circuit court filing fee, [an] appeal [is] properly commenced." 210 W.Va. at 569, 558 S.E.2d at 369.

With regard to the precise technical violation in this case, it is interesting to note that the circuit court order denying the Appellant's petition for appeal was entered twenty days after the Appellant filed his petition for appeal. The Appellant was not provided with any opportunity to correct the defect, and his motion for reinstatement was denied. Even within the context of the filing of a complaint, Rule 4(k) of the West Virginia Rules of Civil Procedure provides a litigant with a period of 120 days in which to serve the summons and complaint. In this case, the Appellant's failure to serve a petition for appeal within 20 days was deemed proper cause for complete denial of his right to appeal an adverse judgment.

The lack of precision with regard to the evaluation of challenges to technical deficiencies has long plagued this Court. In *Gaines v. Hawkins,* 153 W.Va. 471, 170 S.E.2d 676 (1969), the majority held that held that the litigant's failure to provide a bond to the clerk of the Common Pleas Court within the statutory time frame deprived the court of

---

some facts may be more indicative of whether the legislature intended for a statute to be mandatory." 196 W.Va. at 126, 468 S.E.2d at 741.

2. The Garretson Court noted that "[o]ne very important consideration is whether [the statute] mentions any consequences for the Commission's failure to remove the case timely." 196 W.Va. at 126, 468 S.E.2d at 741. That inquiry is not determinative, however, according to the *Garretson* opinion.

But even here, we will not take a mechanistic approach and simply declare that any statute that fails to mention the consequences of failure to follow a procedural provision is automatically deemed directory. While the absence of consequences *creates a presumption* that the statute is merely directory, this presumption is not conclusive.

*Id.* (emphasis supplied).

jurisdiction even though the litigant had provided the bond to the clerk of the Circuit Court as required by the order granting the appeal. Ironically, the clerk of the Circuit Court was also the clerk of the Common Pleas Court. It is the dissent to that decision that provides the most illuminating insight. Judge Calhoun disagreed with the majority's holding of the deprivation of jurisdiction and opined that the majority had "sacrificed substance, justice and reason for the sake of a slavish adherence to empty technicality." 153 W.Va. at 476, 170 S.E.2d at 679 (Calhoun, J., dissenting). Recognizing that some statutory time periods are indeed non-negotiable prerequisites to appellate jurisdiction, Judge Calhoun explained that the majority had "placed a mere procedural irregularity in the same harsh category. In making this decision, the Court has not paused to consider whether the procedural irregularities involved in this case were matters of substance or whether the rights of a party have been prejudiced thereby." *Id.* at 478–79, 170 S.E.2d at 680.

Likewise, the majority in the present case has failed to pause to properly consider, and the rights prejudiced by this decision are those of the Appellant. Ultimately, the majority's conclusion in this case is flawed. The consequence is the unfair denial of a litigant's opportunity to address the merits of his case. The majority is utilizing the existence of a technical violation to deny these rights based upon the supposition that the Appellant's children were denied support. Yet, the Appellant has attempted to forward claims of error in the family court litigation, and those attempts have been thwarted by this ill-conceived majority decision.

The majority's error in this case is compounded by the fact that the circuit clerk was actually assisting this pro se litigant, and the absence of formal rigid compliance with the certificate of service process was the result of this litigant's reliance upon that advice. In this vein, the majority asserts that the Appellant's status as a pro se litigant is of no moment, allegedly due to the Appellant's extensive experience in litigation of this matter. That conclusion hardly comports with this Court's longstanding approach to the rights of pro se litigants. "This Court has long held that non-lawyer, pro se litigants generally should not be held accountable for all of the procedural nuances of the law." *Hammer*, 215 W.Va. at 603, 600 S.E.2d at 315 (Davis, J., concurring).

> When a litigant chooses to represent himself, it is the duty of the trial court to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party.... Most importantly, the trial court must strive to insure that no person's cause or defense is defeated solely by reason of their unfamiliarity with procedural or evidentiary rules.

*State ex rel. Dillon v. Egnor*, 188 W.Va. 221, 227, 423 S.E.2d 624, 630 (1992) (internal quotations and citations omitted).

Based upon the foregoing, I respectfully dissent. I am authorized to state that Justice Starcher joins in this dissenting opinion.