LENORA ROBERTS, *et al.*

*v.*

I. J. POWELL, *et al.*

(No. 13030)

Submitted September 19, 1973. Decided December 4, 1973.

Dissenting Opinion July 29, 1974.

*Hostler, Logsdon & Shinaberry, Sterl F. Shinaberry* for appellants.

*Camper & Watson, Wade T. Watson* for appellees.

NEELY, JUSTICE:

This appeal from the Circuit Court of McDowell County raises four principal assignments of error as a consequence of a jury trial in which both compensatory and punitive damages were recovered by the surface owners of land against the mineral owners. I. J. Powell, et al., the mineral owners, defendants below and appellants here assert that the circuit court erred when it: (1) permitted a general verdict to be returned against multiple defendants; (2) gave instructions which permitted the jury to consider the question of punitive damages; (3) overruled defendants' objection to the admission of certain evidence in the measurement of damages; and (4) when it issued conflicting and contradictory jury instructions.

Plaintiffs, Lenora Roberts, et al., owned three tracts of surface land, consisting of a 100 acre tract, an 89.5 acre tract, and a 55 acre tract. The defendants owned mineral rights as described in certain reservation clauses in deeds conveying the surface to plaintiffs or plaintiffs' predecessors in title.

After negotiations and a failure to reach a settlement with the plaintiffs as to contemplated damages to the surface of the tracts, the defendants began to mine the coal through surface operations commonly known as "strip-mining," in 1966. The testimony at trial indicates that 98% of the surface damage occurred either on the 100 acre tract or on the 89.5 acre tract, and only 2% of the damage attributable to mining operations occurred on the 55 acre tract. Although there were negotiations to settle the amount of damages to the surface before the commencement of the mining operations, these negotiations reached an impasse. After the mining operations had begun, plaintiffs filed a complaint in the Circuit Court of McDowell County which alleged that the defendants entered upon the three tracts with heavy equipment and negligently, carelessly, maliciously, and recklessly damaged the surface, changed the natural terrain and water courses, and cast rock, dirt, and debris upon the property. The plaintiffs further alleged that the entry by the defendants upon the land was wrongful and constituted a trespass. Upon a jury trial held in May 1969, the jury returned a general verdict in favor of the plaintiffs in the amount of ten thousand dollars, consisting of five thousand dollars compensatory damages and five thousand dollars punitive damages. Upon this verdict and after post-trial motions the defendants appealed.

The first alleged error concerned the propriety of the general verdict form against all defendants. Defendants maintain that the jury should have been permitted to assess both compensatory and punitive damages against the individual defendants in accord with the evidence

of each individual defendant's liability. The defendants did not urge the court during trial to instruct the jury that certain items of evidence were only to be considered against specific defendants, and at the time the form of the verdict was being considered by the court, defendants did not object to the general form of the verdict. Under these circumstances the defendants did not comply with Rule 51 of the *West Virginia Rules of Civil Procedure* which requires that a party may only assign error to the giving of instructions if he objects thereto before arguments to the jury are begun stating distinctly the matter to which he objects and the grounds of his objection. Objections to instructions must be distinctly stated, *Smith v. Edward M. Rude Carrier Corp.*, 151 W.Va. 322, 151 S.E.2d 738 (1966), they cannot be general objections, *Fortner v. Napier,* 153 W.Va. 143, 168 S.E.2d 737 (1969) and they must satisfy the stringent requirements of Rule 51, *Yeager v. Stevenson,* 155 W.Va. 16, 180 S.E.2d 214 (1971). Appellants did not raise this issue in a timely manner as it could not first be raised in a post-trial motion to set aside the verdict, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963) and accordingly we hold that the error was waived.

The second assignment of error concerns the propriety of the jury's consideration of punitive damages. Plaintiffs contend that punitive damages may be awarded because under the mineral reservation clauses in the deeds the defendants were required to anticipate and settle the question of compensatory damages before entry upon the land.

The plaintiffs contend that the jury had substantial support for finding that the defendants had no right to strip-mine the surface lands of the Roberts heirs without first making arrangement for compensation. The case was tried on the erroneous premise that the jury were entitled to determine the proper construction of the deeds to the 100 acre and 89.5 acre tracts. However, it is the law in West Virginia that the construction of written instruments

is a question of law for the court, and not for the jury when the writing is complete in itself and the subject matter of it is certain or the facts are ascertained. *McKenzie v. The Western Greenbrier Bank,* 146 W.Va. 971, 124 S.E.2d 234 (1962); *Carbon Fuel Company v. Gregory,* 131 W.Va. 494, 48 S.E.2d 338 (1948); 10 M.J., *Interpretation and Construction,* Section 3. The reservation clause in the deed from I. J. Powell and Louise D. Powell, two of the defendants, to plaintiff Lewis Roberts contained the following reservation clause:

> "Excepting and reserving from the operation of this conveyance all the coal, minerals, mineral substances, oil and gas, in or under said land, and all mining rights and privileges; the full right to mine or drill and remove the same and use as much of the surface as may be necessary in connection therewith appertaining thereto, together with all right-of-way over, through and across said tract of land without liability for damage or injury to said land, timber, appurtenances, or water. Furthermore, all developing of the unconveyed mineral rights shall protect in reason the rights of the Second Party and shall never be construed to permit mining of the surface to obtain the coal or minerals by such means as is commonly known as 'stripping' without compensation for the surface destroyed and damage done thereto."

The reservation clause in the conveyance to Lewis Roberts of the 89.5 acre tract was as follows:

> "The parties of the first part hereby reserve and hold all coal *and* mineral underlying the above surface lands and sufficient rights of way to properly mine all of the said coal. The party of the second part shall be paid a reasonable damage for all surface openings and water sinkings that may occur by any mining operations. It is further agreed that the party of the second part shall have all coal necessary for home consumption without charge."

We hold that the only reasonable construction of these reservation clauses is that the owners of the mineral

rights are entitled to extract the minerals by the use of surface mining, but that they must respond in damages. Plaintiffs' theory that the quantum of damages to the surface must be ascertained in advance of mining is patently unreasonable. Most cases of this type admit to an agreement estimating the amount of damage in advance of mining, and costly litigation is thereby avoided. However, if we were to rule that both parties must agree in advance on the amount of compensation for damage, the owners of the surface would have it within their power to foreclose all of the rights of the mineral owners by virtue of intransigence or unreasonable demands which the mineral owners could not possibly meet. Accordingly, while the owners of the minerals are required to respond in damages, if agreement cannot be reached in advance, we hold that the deeds here in question do not require an advance agreement, as the owner of the surface is still entitled to receive fair compensation through an action at law.

The only oppressive conduct which the plaintiffs allege concerns the manner in which the defendants attempted to negotiate a compromise of plaintiffs' claim for damages. The record indicates only that the negotiations were exactly that, negotiations, and that they did not result in a mutually agreeable settlement. Aside from Mr. Roberts' statement that Mr. Powell at one point said, "He would bury us in the stripping," there is no evidence of malicious or abusive conduct during the course of the negotiations.

The only questionable issue with regard to punitive damages was defendants' entry upon the 55 acre tract, which admittedly they did not have the right to surface mine, but even with regard to this tract, there is no demonstration, or even an attempt to demonstrate, that the mining operations were carried on in a wanton or malicious manner. We need not reach the question of whether entry upon the 55 acre tract alone would, upon proper development of the evidence, support a claim for punitive damages, as plaintiffs' instructions 4 and 5

concerned the entire operation and were not supported by the law or the evidence.

The third assignment of error is that plaintiffs' instructions Nos. 4 and 5 on punitive damages were in conflict with defendants' instructions Nos. 4 and 5. Plaintiffs' instruction No. 4 said:

> ". . . [A]nd if the jury find by a preponderance of the evidence that the defendants intentionally, wilfully, wantonly, or in wilful, reckless, indifference or disregard of the plaintiffs' rights, entered upon the plaintiffs' surface lands, constructed a road, prospected and conducted strip mining operations thereon, thereby causing damage to said lands, then you may in your discretion allow punitive damages to the plaintiffs for such an amount as taken together with the actual damages, will be sufficient to punish the defendants and deter them and others from committing like actions. . . ."

Plaintiffs' instruction No. 5 merely told the jury that if they found punitive damages they should render separate verdicts for the compensatory damages and the punitive damages. Defendants' instructions Nos. 4 and 5 read as follows:

> "INSTRUCTION NO. 4.
>
> "The court instructs the jury that the deed from the defendant I. J. Powell and his wife to Lewis Roberts, dated April 13, 1955, conveying the 100 acre tract of land involved in this case, reserves to Mr. and Mrs. Powell the right to remove the coal and to use as much of the surface as may be necessary in connection therewith and also reserves to Mr. and Mrs. Powell all right of way over, through or across the tract of land without being liable for damage or injury to the land or timber or appurtenances or water, but further provides that if the coal is removed by stripping, then Lewis Roberts was to be compensated for the surface destroyed and the damage done thereto.
>
> "Therefore, you are further instructed that the defendant, I. J. Powell and his lessees had the

right to go on the 100 acre tract and remove the coal by stripping, but in the exercise of that right they were required to compensate the plaintiffs for the surface destroyed and the damage done thereto."

"INSTRUCTION NO. 5.

"The court instructs the jury that the deed .from Nancy Christian, et al. to Lewis Roberts, dated March 19, 1943, conveying the 89.5 acre tract of land involved in this case reserved to Nancy Christian, her heirs and assigns, all coal and minerals underlying the surface of the 89.5 acre tract and also reserved sufficient rights-of-way to properly mine all of the coal, but provides that the owner of the surface shall be paid a reasonable damage for surface openings and water sinkings that might result from the mining operations.

"The mineral and mining rights reserved by Nancy Christian under the 89.5 acre tract were conveyed by Nancy Christian to I. J. Powell and Louise D. Powell by deed dated May 20, 1964.

"Therefore, you are instructed that the defendants, I. J. Powell and Louise D. Powell and their lessees had the right to go on the 89.5 acre tract of surface land and remove the coal by stripping, but in the exercise of that right, they were required to pay the plaintiffs a reasonable damage for all surface openings and water sinkings that occurred as a result of the mining operations. . . ."

In view of the discussion on punitive damages *supra,* the only conceivable way in which these instructions could be consistent is if there were sufficient evidence to warrant a finding that the defendants' actual mining operations were conducted in a violent and improper manner or in a willful disregard for the rights of the plaintiffs. There was no evidence to this effect. This Court therefore holds that "Where the instructions given in behalf of plaintiff are erroneous, and contradictory to instructions given in behalf of defendant, judgment in favor of plaintiff will be reversed." Syllabus pt. 2.

*Barnett v. Boone Lumber Co.,* 43 W.Va. 441, 27 S.E. 209 (1897).

The fourth and last assignment of error challenges the admissibility of evidence concerning the original consideration paid by I. J. Powell for the 100 acre tract and further challenges the admission of testimony concerning profits made from the mining operations. During trial, over defendants' objection, testimony disclosed that one of the defendants purchased the 100 acre tract at a tax sale for forty dollars and subsequently sold the surface to one of the plaintiffs for one thousand dollars. While we hold that the price later paid by the plaintiffs for the surface of the 100 acre tract is competent evidence on the grounds that the transaction was voluntary and made at arm's length, thus tending to establish its fair market value, *Baltimore and Ohio Railroad Co. v. Bonafield's Heirs,* 79 W.Va. 287, 90 S.E. 868 (1916) and *Monongahela West Penn Publ. Serv. Co. v. Monongahela Development Co.,* 101 W.Va. 165, 132 S.E. 380 (1926), the testimony concerning the original price paid by a defendant at the tax sale is not relevant, and was only calculated to prejudice the jury by demonstrating the profits of the defendants. Obviously it was not the intention of the plaintiffs to introduce testimony that forty dollars was paid for the entire 100 acre tract and minerals to demonstrate the land's fair market value for the purpose of proving plaintiffs' damages. It was prejudicial error, therefore, to overrule defendants' objection to the introduction of this evidence.

Defendants also objected to testimony concerning the quantity of coal which had been mined, the royalties received from the mining by defendants, and the profits realized by the defendants. This evidence was without any probative value for determining the fair market value of the surface land before and after the disturbances caused by the strip-mining. As the evidence was irrelevant and its only effect was to prejudice the jury against the defendants, we hold its admission to be

208

reversible error. *Gauley & Eastern Railway Co. v. C. A. Conley, et al.,* 84 W.Va. 489, 100 S.E. 290 (1919). It makes no difference with regard to the disturbance of the surface whether the mining were for gold or coal.

For the above reasons the judgment of the Circuit Court of McDowell County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

SPROUSE, JUSTICE, dissenting:

I respectfully dissent from the majority decision. The question of puntive damages was properly before the jury and was for the jury to decide. The majority opinion would seem to preclude the use by a jury of a properly introduced deed unless its terms were completely explained by the court. Legal interpretation of deeds is, of course, a matter for the court. This does not mean that a deed cannot be introduced into evidence. The terms in issue at trial were covered by instructions given for both plaintiff and defendant. The jury should have been able to consider this evidence as it would have any other legal document properly before it. The provisions of the deed relating to entry and damages, together with the testimony of the parties concerning negotiations for entry on the land and mining certainly comprised sufficient evidence on which the jury could determine the question of punitive damages. Plaintiffs' Instruction Nos. 4 and 5, and Defendants' Instruction Nos. 4 and 5, presented their respective theories of the issues covered. If there was a conflict, it was presented by the evidence. and it was for the jury to resolve.