558 S.E.2d 363

**Keith WOLFE, dba Petersburg Motor Company, Plaintiff Below, Appellee,**

v.

**John C. WELTON, Jr., Defendant Below, Appellant.**

No. 29696.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 2, 2001.

Decided Dec. 12, 2001.

Concurring Opinion of Chief Justice McGraw Jan. 14, 2002.

**566**

Duke A. McDaniel, Petersburg, for the Appellee.

John David Judy, III, Judy & Judy, Moorefield, for the Appellant.

ALBRIGHT, Justice.

John C. Welton, Jr., (hereinafter "Appellant") appeals a final order of the Circuit Court of Grant County reversing a jury verdict returned in favor of Appellant in magistrate court in an action involving the purchase of a used motor vehicle by Appellant from Keith Wolfe, dba Petersburg Motor Company (hereinafter "Appellee").

This action was commenced when Appellee filed suit against Appellant in the Magistrate Court of Grant County to recover sums allegedly owed Appellee on an open account, including amounts for repairs to the used motor vehicle Appellant had purchased from Appellee and repairs to one or more other motor vehicles owned by Appellant. Appellant counterclaimed for damages on the theory that Appellee had failed to honor implied warranties of merchantability and fitness for purpose applicable to the used motor vehicle. The matter was tried to a jury. The jury rejected the claim of Appellee and returned a verdict in favor of Appellant. A judgment was awarded by the magistrate court for the sum of the verdict,[1] attorney fees in favor of Appellant, costs and interest.

Appellee appealed the magistrate court judgment to the circuit court. After considering briefs by both parties, the circuit court, by an order entered February 28, 2000, reversed the magistrate court judgment and remanded the case for further proceedings. It is from that February 28, 2000, circuit court order that Appellant now appeals, assigning numerous errors.

Appellant contends that the circuit court erred by failing to dismiss the appeal below when Appellee did not file a "petition of appeal" and that the circuit court lost jurisdiction by failing to conclude the appeal within specified time limits. Appellant further contends that the lower court erred in finding that an implied warranty did not apply to a vehicle sold under an express warranty and refusing to apply certain provisions of the Consumer Credit and Protection Act (W.Va. Code § 46A–6–101, *et seq.* (1974)) to the case.

---

**1.** Appellant had counterclaimed for an unspecified amount, which included all expenses incurred by him in the attempted repair of the defective vehicle, annoyance, inconvenience, other losses proven at trial, attorney fees and costs; the amount of the verdict returned in his favor was $1,000.00, plus costs, including attorney fees.

Appellant additionally contends that the lower court erred in finding that the verdict of the jury was contrary to the law and evidence, in reversing the verdict, and in remanding to the magistrate court for further proceedings.

We find that Appellee perfected his appeal below and that the circuit court had and retained jurisdiction to hear the appeal. We further find, contrary to an assertion by Appellee, that this Court has jurisdiction to consider this appeal. However, we further find that the circuit court committed error in its reversal of the judgment of the magistrate court. Accordingly, we reverse the judgment of the circuit court and remand for proceedings consistent with this opinion.

## I. FACTS

On February 6, 1999, after performing a test-drive, Appellant purchased a used GMC "Jimmy" truck from Appellee, the owner of Petersburg Motor Company. The Odometer Statement furnished Appellant at the time of purchase disclosed that the vehicle had been driven 85,904 miles to that time. Many of the remaining facts regarding the vehicle are in dispute. According to Appellant, when he first noticed a problem with the vehicle's transmission, he took the vehicle to Appellee's place of business for repairs on February 8, 1999.[2] Appellant further asserts that on February 13, 1999, and again on February 26, 1999, he returned the vehicle to Appellee for repairs to the transmission.[3] In contrast to Appellant's assertions, Appellee expressly denied in his answer to Appellant's counterclaim that there were any problems with the transmission when the vehicle was sold.[4] Appellee also stated in his answer that the records of Petersburg Motor Company did not show that the vehicle was taken back to Petersburg Motor Company on either February 26 or February 27.[5] Notwithstanding this denial by Appellee, both parties agree that on or about February 27, 1999, Appellee wrote on a business card: "2/27/99 Warrant to John Welton 6 mo or 10,000 mi 30/70 warranty." He then signed the card and gave it to Appellant.[6]

Both parties agree that in the period between March 20 and March 23, 1999, Appellant brought the GMC Jimmy to Appellee for service. Appellant claims that this constituted another attempt to repair the transmission; Appellee claims that the service visit related to the installation of a part unrelated to the transmission, purchased and furnished by Appellant. The parties also agree that on May 19, 1999, the vehicle was brought in to Appellee's business for repairs, including checking the transmission, addressing an electrical problem, and replacing one or two solenoids. The mileage odometer at that time read 95,037.

2. Appellee's Exhibit 13 in magistrate court is a statement of charges made by Appellee's dealership against Appellant. It contains an entry for February 8, 1999, reading: "seal, Atf, labor GMC."

3. Appellee's Exhibit 13 also a contains the following notation, dated February 15, 1999: "credit account- 3.5 hours labor," and shows $50.00, with the notation: "recd on account." The record here suggests that Appellant owed some money to Appellee for work on another vehicle or vehicles at the time of the purchase of the used GMC Jimmy.

4. The record before us contains several service order receipts for transmission work done on the subject vehicle by Appellee prior to Mr. Welton's purchase of said vehicle. Specifically, a receipt dated 8/12/98 indicates "5 qts ATF" and "...trans". Also, in the "Owners Manual", the following entries appear regarding routine service performed upon the vehicle. One entry reads: "8–12–98 78900 transmission services oil & filter." Another reads: "10–22–98 oil lube antifreeze power steering trans check, chester".

5. In contrast to Appellee's assertions, Appellant's Exhibit 2 in magistrate court, which purports to be a copy of the owner's manual for the GMC Jimmy, contains the following entry: "Date 2/26/99, Actual Mileage 87,490, Serviced By: flush trans/oil line."

6. At the time of purchase, Appellee had given an express warranty to Appellant, committing to pay 30% of any parts and labor charges incurred by reason of "covered systems that fail" before 30 days had expired after purchase or the vehicle had been driven 1000 miles, whichever first occurred. (We note here that this express limited warranty given Appellant by Appellee at the time of purchase of the vehicle advised Appellant of possible implied warranties, as required by law.) It appears that the card mentioned above served to extend that original express warranty to the earlier of six months or 10,000 miles.

On May 25, 1999, Appellant alleged that the transmission failed outright and the GMC Jimmy had to be towed to Grant County from Uniontown, Pennsylvania, at a cost of $140.00. Appellant asserts that he then took the truck to another car dealership and that they were also unable to repair the transmission.[7] Appellant again took the vehicle to Appellee's business for repair of the transmission on June 18, 1999.[8] Apparently at the request of Appellant's father, a Mr. Jack Welton, the transmission was ultimately replaced by Appellee on June 25, 1999. The work receipt for that work reflected a total bill of $1,439.11 and contains the notations, "Bill Jack Welton", and "Jack Welton Will [be] Responsible for Bill." The mileage recorded on the vehicle's odometer at that time was stated on the bill to be 96,349 miles. Appellant took the vehicle to Appellee for repair one last time, on July 8, 1999. According to the work receipt, a wire was found not to be making contact. A further notation suggested that the problem apparently occurred "when Don installed transmission or when Ed spliced wire." There was no charge for this last repair.

Appellant made payments toward his balance on his open account with Appellee at least through August of 1999. The open account included, as mentioned, some charges incurred for another vehicle or vehicles before the purchase of the GMC Jimmy.[9] On October 18, 1999, Appellee filed his complaint in the Magistrate Court of Grant County, seeking judgment for an alleged balance on that open account of $2,128.81 plus costs. In due course, Appellant filed an answer and counterclaim, and the matter was then heard before a jury, resulting in a judgment in favor of Appellant for the sum of $1,000.00, plus costs, including attorney fees, and interest.

## II. STANDARD OF REVIEW

■ As this Court stated in *Phillips v. Fox*, 193 W.Va. 657 at 661, 458 S.E.2d 327 at 331(1995), "[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

■ Furthermore, regarding jury verdicts, in syllabus point two of *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 (1948), we stated: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." *Id.*

## III. DISCUSSION

### A. Jurisdiction of the Circuit Court

#### 1. Lack of "Notice of Appeal"

Appellant argues that the circuit court had no jurisdiction to hear this appeal from the Magistrate Court of Grant County because Appellee failed to file a "petition of appeal" as required by West Virginia Code § 50–5–12(c) (1994), with respect to magistrate court civil cases heard by a jury, and West Virginia Code § 50–5–12(d) (1994), with respect to magistrate court civil cases heard without a jury. To begin our review of this question,

---

7. Country Chevrolet–Buick, Inc., charged Appellant $133.90. The receipt for their work indicated, in part, "hot transmission won't start off in 1st gear," and "checked codes with tech II trans. solinod stuck."

8. The work receipt for this visit reflects that the vehicle's mileage was 95,989 and contains the following work notations: "ck trans," "ck eng light," "3–4 shift soln. stuck off," "replace soln", and "4 qt ATF"

9. Plaintiff's Exhibit 13 from the magistrate trial, Petersburg Motor Company's statement of account for Appellant, appears to indicate a balance of $509.37 for repairs made prior to Mr. Welton's purchase of the subject vehicle on February 6, 1999, although in Appellee's brief filed with this Court he states that the prior bill was $689.70. From February 8, 1999, through October 1999, Exhibit 13 shows that there were charges of an additional $472.85, plus $20.23 in interest accrued, with credits and/or payments of $312.75. The charges for the June 25, 1999, transmission replacement do not appear on this statement.

we look first at the provisions of our rules for the commencement of appeals from magistrate courts found in Rule 18 of the Rules of Civil Procedure For Magistrate Courts.

▆▆▆ Rule 18 contemplates that an appeal from magistrate court shall be commenced by filing a "[n]otice of appeal" in the magistrate court within 20 days after judgment,[10] the posting of an appeal bond [11] and the payment to the magistrate court clerk of the circuit court filing fee for the appeal. The record discloses that Appellee did not file a document entitled "Notice of Appeal," as contemplated by Rule 18. Appellee did, however, file an appeal bond in magistrate court on a form prepared by this Court for use in magistrate court appeals. It was signed by Appellee and states that "[t]he ... plaintiff ... wishing to exercise the right to appeal the judgment in this case," gave bond in the amount required to effect appeal. The bond was accompanied by payment to the magistrate court of the circuit court filing fee for an appeal, which was duly transmitted to the circuit court. The record does not contain a separate document purporting to be a "notice of appeal" under Rule 18 of the Rules of Civil Procedure For Magistrate Courts, and we take judicial notice of the fact that this Court does not provide the magistrate courts with a separate form for giving a "notice of appeal." [12] In these circumstances, the filing of the appeal bond on the form provided by this Court, clearly stating that the party does so "wishing to exercise the right to appeal the judgment in this case," substantially fulfills the Rule 18 requirement for the filing of a "notice of appeal." [13] We conclude that upon the filing of the bond and payment to the magistrate court of the cir-

cuit court filing fee, the appeal was properly commenced.

### 2. Absence of a "Petition for Appeal"

As noted, Appellant's stated objection is that Appellee failed to file a "Petition for Appeal" in circuit court. West Virginia Code § 50–5–12(c) (1994) appears to contemplate that when the matter was heard in magistrate court by a jury, a party wishing to appeal to the circuit court will file in circuit court a "petition setting forth the grounds" for appeal and a designation of the portions of the record below deemed material. W.Va. Code § 50–5–12(c) (1994). Opposing parties may supplement Appellant's designation of the record, and the circuit court may by general or special order limit the record to be brought up from the magistrate court.[14]

In the case before us, Appellee did not file a document in the circuit court denominated a "petition setting forth grounds" or a "petition for appeal" at any time. Rather, after the entry of an order by the circuit court setting forth a briefing schedule for the parties, each of the parties set forth their grounds for and against the appeal in those briefs, and the circuit court reached and published its decision.

▆▆▆ The circuit court had earlier determined, by order, that Appellee's appeal from the magistrate court judgment was to be heard *de novo,* a disposition appropriate only to a civil case heard by the magistrate court without a jury. W.Va.Code § 50–5–12(d) (1994). Since the matter was actually heard in magistrate court by a jury, that circuit

---

**10.** After the 20–day period, but not later than 90 days after the date of judgment, an appeal may be granted by the circuit court upon a showing of good cause why the notice was not filed in the magistrate court within the 20–day period. R.Civ.P.M.C. 18.

**11.** In *State ex rel. Kern v. Santucci,* 201 W.Va. 144, 147, 494 S.E.2d 911, 914 (1997), we held the posting of the bond to be mandatory in order to effect an appeal.

**12.** In performance of administrative responsibilities, staff of this Court have prepared and distributed to clerks of courts several forms for use as

aids in handling cases. It remains the responsibility of parties litigant to see that the papers they file with the courts are legally sufficient.

**13.** The current bond form should be promptly revised to clearly state that it operates also as the required "notice of appeal." In the meantime, the bond form presently in use is sufficient to constitute the required "notice of appeal," although it is quite proper for a party seeking an appeal to prepare and file a "notice of appeal" separate from the bond form currently in use.

**14.** *See* W.Va.Code § 50–5–12(c)(1), (2), and (3) (1994).

court order was in error.[15]  In matters heard in magistrate court without a jury, West Virginia Code § 50–5–12(d) (1994) contemplates that the appellant file in the circuit court a "petition for appeal and trial *de novo*."  In appeals *de novo*, the magistrate court record before the circuit court consists only of the exhibits, papers, "and requests" filed below, excluding the testimony taken and trial proceedings had in magistrate court.  W.Va.Code § 50–5–12(d)(1) (1994).

■  Since the circuit court—at least initially—treated this appeal as *de novo*, West Virginia Code § 50–5–12(d) (1994) may fairly be considered to be the law applicable to this case with respect to the necessity of filing of a petition for appeal, despite the reality that the case was heard in magistrate court before a jury.  Giving due regard to the entry of the erroneous order by the circuit court, neither of the parties here may have been fairly alerted to any obligation to file a designation or supplemental designation of the record to be brought from the magistrate court.  Moreover, since there is no time specified for the filing of a "petition of appeal" under either West Virginia Code § 50–5–12(c) or (d) (1994), this Court is of the opinion that the timely filing by the parties of their respective briefs, setting forth their appeal grounds and responses pursuant to the order of the circuit court, satisfied the statutory requirements for such a petition for appeal.  We perceive that the real office of such a petition for appeal is to advise the circuit court and opposing parties of the legal and factual bases of the appeal.  It appears that the briefs required by the order of the circuit court substantially accomplished that purpose in this case.[16]

### 3. Lack of Timely Disposition of the Appeal

Appellant next argues that the circuit court erred in failing to dismiss the appeal when it was not concluded within 90 days after being "regularly placed upon the docket of the circuit court," as required by West Virginia Code § 50–5–12(c)(6) (1994) and Rule 16.11(b) of the West Virginia Trial Court Rules in regards to an appeal of a civil case from a magistrate court in a case heard before a jury.  Appellant argues that the circuit court has no jurisdiction to grant relief in the appeal after the expiration of that 90–day period and urges us to literally enforce the provisions of West Virginia Code § 50–5–12(c)(6) (1994).[17]

#### a. *De Novo* Appeal

In the circumstances here, we do not believe that the circuit court's failure to timely act creates a jurisdictional defect.  Because the circuit court treated this appeal as *de novo*, at least initially, we look first at West Virginia Code § 50–5–12(d) (1994), and the provisions of Rule 16.11(b) of the Trial Court Rules requiring that a final judgment order in a *de novo* civil appeal from a magistrate court "shall be entered within six (6) months of the receipt of the magistrate court file by the clerk of the circuit court."  T.C.R. 16.11(b).

The record discloses that the clerk of the circuit court received the magistrate court file in this case on July 21, 2000.  Therefore, the entry of the judgment order of the circuit court order on February 28, 2001, clearly did not meet the six-month time frame specified by Rule 16.11(b) of the Trial Court Rules for *de novo* appeals.  The question now is whether that time frame is jurisdictional.

---

**15.**  In his brief to this Court, Appellant stated, "[a]pparently, the Circuit Court ultimately determined that the proceedings by the Circuit Court would be from the record ...."  In light of the fact that the circuit court's order deciding the appeal disapproved certain instructions, found the verdict below contrary to the law and the evidence, and remanded the case to the magistrate court for further proceedings—all without a trial *de novo* in the circuit court—it appears that the circuit court did ultimately treat this appeal as one heard below by a jury, subject to review on appeal only for errors of law.  *See* W.Va.Code § 50–5–12(c) (1994).

**16.**  We urge persons desiring to prosecute such appeals in the future to respect the express dictates of the statute, particularly with regard to the differing requirements for appeals from magistrate court judgments heard before a jury and those heard by the court alone.

**17.**  Appellant cites *Maryland Trust Co. v. Gregory*, 133 W.Va. 387, 56 S.E.2d 378 (1949), and *Worley v. Easley*, 123 W.Va. 1, 13 S.E.2d 158 (1941).  We find neither of these cases, which pre-date the modern magistrate court system, helpful in resolving the issue before us.

■ The Legislature is vested with the sole authority to define the appellate jurisdiction of circuit courts in cases originating in the magistrate courts. W.Va. Const. art. VIII, § 6. West Virginia Code § 50–5–12(d)(2) (1994) speaks expressly only to when a civil appeal *de novo* is stale because of a failure to prosecute. That statute requires that if such an appeal is not brought on for hearing before the end of the second term after the appeal is docketed in the circuit court, it shall be considered abandoned in the absence of cause being timely shown and that any dismissed appeal shall not be reinstated after the close of the next regular term. We are of the opinion that the provisions of West Virginia Code § 50–5–12(d)(2) (1994) set the only jurisdictional timeliness parameters of a *de novo* appeal to a circuit court of a civil case from a magistrate court. Those parameters address a failure to prosecute, not a delay in the circuit court's ruling on the appeal. With respect to Rule 16.11(b) of the Trial Court Rules, we note that it is a part of the standards established by this Court to promote the timely disposition of cases and does not operate to limit the jurisdiction of the circuit courts.[18] We conclude that the time periods specified in Rule 16.11(b) of the Trial Court Rules for the disposition by circuit courts of appeals from magistrate courts are administrative, not jurisdictional.

Applying the two-term jurisdictional test in West Virginia Code § 50–5–12(d)(2) (1994), we note first that Rule 2.21 of the Trial Court Rules fixes the terms of the Circuit Court of Grant County as commencing in the months of March, July and November. The order fixing times for the filing of briefs was entered on or about October 30, 2000, and the briefing schedule concluded by January 20, 2001. Clearly, the appeal was brought on by the parties for hearing well within the time limits fixed by West Virginia Code § 50–5–12(d)(2) (1994).

b. Appeal of a Case Tried Before a Jury

■ We turn next to consideration of West Virginia Code § 50–5–12(c) (1994), the statutory provision actually applicable to this appeal of a civil case heard in magistrate court with a jury. That section specifies, as does Rule 16.11(b) of the West Virginia Trial Court Rules, that appeal proceedings in a case heard before a jury shall be concluded in the circuit court within 90 days after the case is docketed there. However, we find no express direction in section 12(c) that the 90–day limit is to be jurisdictional. Section 12(c), unlike Section 12(d), is simply silent on the jurisdictional question. We cannot conclude that there was any intention by the Legislature to deprive the circuit courts of jurisdiction in a civil appeal of a case heard by a jury 90 days after the docketing of the appeal. And, as in the matter of cases to be appealed to the circuit court *de novo*, Rule 16.11(b) of the Trial Court Rules must be seen as administrative, not jurisdictional. Accordingly, we conclude that the circuit court retained jurisdiction to hear and decide this case when on February 28, 2000, it entered the order here appealed.

B. Jurisdiction of This Court

■ We move next to the authority of this Court to hear the matter, addressing the substance of a motion filed here by Appellees after this appeal was docketed by this Court, asserting that we have no jurisdiction of the appeal because the circuit court remanded the matter to a lower court with directions. We consider challenges to our jurisdiction even when not raised as an assignment of error. As set forth in syllabus point two of *In re Boggs' Estate*, 135 W.Va. 288, 63 S.E.2d 497 (1951), "[t]his Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein."

The issue addressed by the motion is essentially the same as that posed in another case decided this term, *Foster v. Sakhai*, 210 W.Va. 716, 559 S.E.2d 53 (2001). There the Appellee claimed that this Court lacked jurisdiction to hear an appeal of an order granting a new trial in the circuit court because the Legislature had amended a statute addressing the jurisdiction of this Court, removing a provision, *inter alia*, expressly authorizing appeals of orders granting a new

---

**18.** For example, see the provisions of Rule 16.01 of the Trial Court Rules, which expressly authorize the circuit courts to exceed the time limits for "extraordinary circumstances."

trial. In *Foster*, this Court determined that the Legislature could not have intended to remove from the jurisdiction of this Court certain matters over which this Court has historically exercised jurisdiction and matters over which this Court has authority by virtue of constitutional provisions.[19] We agree with the reasoning employed in *Foster*.

Since the adoption of the 1974 Judicial Reorganization Amendment, the constitution has contained the following regarding this Court's appellate jurisdiction:

The court shall have appellate jurisdiction in civil cases at law where the matter in controversy, exclusive of interest and costs, is of greater value or amount than three hundred dollars unless such value or amount is increased by the legislature; in civil cases in equity; in controversies concerning the title or boundaries of land; in proceedings in quo warranto, habeas corpus, mandamus, prohibition and certiorari; and in cases involving personal freedom or the constitutionality of a law. It shall have appellate jurisdiction in criminal cases, where there has been a conviction for a felony or misdemeanor in a circuit court, and such appellate jurisdiction as may be conferred upon it by law where there has been such a conviction in any other court. In criminal proceedings relating to the public revenue, the right of appeal shall belong to the State as well as to the defendant. It shall have such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law.

The court shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law.

W.Va. Const. art. VIII, § 3.

Until 1998, the legislative enactment related to this Court's jurisdiction read as follows:

A party to a controversy in any circuit court may obtain from the supreme court of appeals, or a judge thereof in vacation, an appeal from, or a writ of error or

supersedeas to, a judgment, decree or order of such circuit court in the following cases: (a) In civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars, wherein there is a final judgment, decree or order;

(b) In controversies concerning the title or boundaries of land, the probate of a will, or the appointment of a personal representative, guardian, committee or curator;

(c) Concerning a mill, road, way, ferry or landing;

(d) Concerning the right of a corporation, county or district to levy tolls or taxes;

(e) In any case of quo warranto, habeas corpus, mandamus or prohibition;

(f) In any case involving freedom or the constitutionality of a law;

(g) In any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction, or requiring money to be paid, or real estate to be sold, or the possession or title of property to be changed, or adjudicating the principles of the cause;

(h) In any case where there is a judgment or order quashing or abating, or refusing to quash or abate, an attachment;

(i) In any civil case where there is an order granting a new trial or rehearing, and in such cases as appeal may be taken from the order without waiting for the new trial or rehearing to be had;

(j) In any criminal case where there has been a conviction in a circuit court or a conviction in an inferior court which has been affirmed in a circuit court.

Appeals shall not lie under subdivisions (g), (h) and (i) where pecuniary interests only are involved, unless the amount in controversy, exclusive of costs, exceeds one hundred dollars.

W.Va.Code § 58–5–1 (1925) (Repl.Vol.1997).

In its 1998 amendment of West Virginia Code § 58–5–1, the Legislature elected to address only sub-section (a) of the former

---

**19.** *See* W.Va. Const. art. VIII, § 3.

enactment, relating to the appeal of final orders in civil cases, as follows:

> A party to a civil action may appeal to the supreme court of appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties. The defendant in a criminal action may appeal to the supreme court of appeals from a final judgment of any circuit court in which there has been a conviction or which affirms a conviction obtained in an inferior court.

W.Va.Code § 58–5–1 (1998) (Supp.2001).

As enacted, the 1998 amendment operates only to clarify the ability to appeal civil actions in which final judgments have been entered or partial final judgments have been entered pursuant to Rule 54(b) of the Rules of Civil Procedure, and to remove the requirement that an appealable civil action involve any particular amount in controversy. In its 1998 amendment of West Virginia Code § 58–5–1, the Legislature acknowledged that the former provisions of that section were "not in conformity with rules of appellate procedure promulgated by the supreme court of appeals," but elected not to address with particularity any of the myriad of matters other than appeals of final orders previously addressed in that section. 1998 W.Va. Acts ch. 110. Some of those other matters had been addressed in the statute for decades. In particular, the ability to appeal orders granting new trials has been a part of our statutory law since 1868.[20] Instead, the Legislature left these matters to

be dealt with under the grant of jurisdiction and rule-making authority contained in the constitution. W.Va. Const. art. VIII, § 3.

In his concurring opinion in *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 454 S.E.2d 77 (1994), Justice Cleckley called upon the Legislature to amend West Virginia Code § 58–5–1 to provide for "ordinary" interlocutory review "whenever the question presented is either of great practical importance in a particular case or of general importance as a matter of procedural law." *Id.* at 39, 454 S.E.2d at 84. Unfortunately, the Legislature did not heed that advice in writing its 1998 amendments, preferring to address only final judgments and partial final judgments. Notwithstanding this Court's agreement with former Justice Cleckley that the Legislature should both recognize and expressly provide for flexible interlocutory review within West Virginia Code § 58–5–1, we share the view articulated in *Foster* that this Court's jurisdiction to consider interlocutory appeals of orders granting a new trial is encompassed within the authority granted under the state constitution for appellate review of both cases of law and cases of equity. W.Va. Const. art. VIII, § 3.

We are also mindful of the action of the Legislature in giving the magistrate courts the status of a court of "limited record" in civil cases heard by a jury. *See* W.Va.Code § 50–5–8(e) (1994). In doing so, the Legislature provided that, upon appeal to a circuit court of such case, the appeal was to be on the record made below and the circuit court, rather than holding a trial *de novo* as in the past, is to review the case for errors in law according to specific standards set out by statute. *See* W.Va.Code § 50–5–12(c)(3) (1994).[21] In so doing, the Legislature has

---

**20.** *See* 1868 W.Va. Acts ch. 87 (specifying that order granting new trial is appealable to West Virginia Supreme Court of Appeals).

**21.** West Virginia Code § 50–5–12(c)(3) (1994) states as follows:

(c) In the case of an appeal of a civil action tried before a jury, the following provisions shall apply:

\* \* \*

(3) After the record for appeal is filed in the office of the circuit clerk, the court may, in its

discretion, schedule the matter for oral argument or require the parties to submit written memoranda of law. The circuit court shall consider whether the judgment or order of the magistrate is:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;

(B) Contrary to constitutional right, power, privilege or immunity;

clothed the magistrate courts in such cases with a status closely akin to the "court of record of limited jurisdiction" created and implemented under the former provisions of Article VIII, § 19 of the West Virginia Constitution and West Virginia Code § 58–4–1 (1931), et seq. While the cited constitutional provisions have been repealed, the related statutory provisions remain on the books. In West Virginia Code § 58–4–17 (1931), the Legislature had provided with respect to cases originally heard in such "court of limited jurisdiction" and subsequently appealed to circuit courts, that an appeal would lie to this Court from "any action of the circuit court in affirming or reversing any judgment, decree or order of such court of limited jurisdiction." W.Va.Code § 58–4–17 (1931). We read that language as treating as an appealable order "any action" of the circuit court reversing the judgment of an inferior court, even though the order reversing the judgment undertook to remand the case to the inferior court for a new trial or other proceedings. In a similar light, it appears that an order of a circuit court reversing a judgment of a magistrate court in an action heard there on its merits constitutes an appealable order, notwithstanding any language in the circuit court order undertaking to remand the case to the magistrate court for a new trial or other proceedings.

■ In light of the foregoing, we conclude that this Court is vested with jurisdiction to hear an appeal from a circuit court judgment reversing the judgment of the magistrate court in a matter heard there on the merits, notwithstanding the fact that the order also undertakes to remand the case to the magistrate court for a new trial or other proceedings. Insofar as *Ritchie County Bank v. Ritchie County Court*, 65 W.Va. 208, 63 S.E. 1098 (1909), and its progeny may be read to hold otherwise, they are overruled.

### C. The Substantive Issues

#### 1. Warranties

First, Appellant contends that the circuit court erred when it ruled that no implied warranties applied to the motor vehicle at issue, because Appellee had furnished an express warranty. When Appellee sold Appellant the motor vehicle at issue, the following express "limited" warranty, entitled "Buyers Guide" Warranty was applied to the sale:

> LIMITED WARRANTY. The dealer will pay 30% of the labor and 30% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. **Under state law, 'implied warranties' may give you even more rights.**
> SYSTEMS COVERED: Transmission, Engine, Differential DURATION: 30 days or 1000 miles whichever comes first. No outside invoices will be accepted as reimbursements. All service must be done in our dealer service area. (Emphasis added).

Below, the circuit court held that this express warranty, and its later expansion on the back of Appellee's business card, prevented Appellant from asserting the benefit of any implied warranties. In making its ruling on this issue, the circuit court apparently relied upon the provisions of West Virginia Code § 46–2–316 (1963), stating rules for the exclusion or modification of warranties where such is proper, which states, in pertinent part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify an implied warranty of fitness the exclusion must be by writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

W.Va.Code § 46–2–316 (1963).

It appears that the circuit court did not take into account the effect of West Virginia

---

(C) In excess of statutory jurisdiction, authority or limitations or short of statutory right;

(D) Without observance of procedure required by law;

(E) Unsupported by substantial evidence; or

(F) Unwarranted by the facts.

Code § 46A–6–107 (1974), part of the West Virginia Consumer Credit and Protection Act, which renders void any exclusion, modification, or attempted limitation of warranties or legal remedies for breach of warranties, express or implied, arising in sales of goods and chattels to consumers, as follows:

Notwithstanding any other provision of law to the contrary with respect to goods which are the subject of or are intended to become the subject of a consumer transaction, no merchant shall:

(1) Exclude, modify or otherwise attempt to limit any warranty, express or implied, including the warranties of merchantability and fitness for a particular purpose; or

(2) Exclude, modify or attempt to limit any remedy provided by law, including the measure of damages available, for a breach of warranty, express or implied.

Any such exclusion, modification or attempted limitation shall be void.

W.Va.Code § 46A–6–107 (1974).

■ Clearly, the circuit court was wrong in applying the general provisions of the Uniform Commercial Code without taking into account the special provisions of the West Virginia Consumer Credit and Protection Act prohibiting the exclusion or modification of implied warranties in consumer sales transactions.

■ Appellant next complains that the circuit court erred by also ruling that the provisions of West Virginia Code § 46A–6–101 (1974), *et seq.*, including § 46A–6–107 (1974), could only apply to new vehicles, not used ones. We agree. That Code section, drawn as noted from the West Virginia Consumer Credit and Protection Act, applies to sales to consumers in a consumer transaction. West Virginia Code § 46A–6–102(d) (1996), defines "Sale" to include "any sale, offer for sale or attempt to sell any goods for cash or credit." West Virginia Code § 46A–6–102(b) (1996), defines "Consumer" as "a natural person to whom a sale or lease is made in a consumer transaction, and a 'consumer transaction' means a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose."

We find no basis in these definitions, elsewhere in the statute or in case law, to apply the act only to "new" goods or to exempt "used" goods from the prohibition in the statute against waiving or modifying implied warranties in consumer sales. Accordingly, we conclude that the provisions of section 107, article 6, of the West Virginia Consumer Credit and Protection Act, relating to sales of goods to consumers, are equally applicable to sales of new goods and to sales of used goods.

### 2. Instructions

■ The court below held Instruction Nos. 1, 4 and 9 to be erroneous statements of the law. We note first that Appellee here did not object in magistrate court to Instruction No. 1. Accordingly, we are of the opinion that any error in that instruction was waived. As we stated in syllabus point one of *Roberts v. Powell,* 157 W.Va. 199, 207 S.E.2d 123 (1973), "[a] party may only assign error to the giving of instructions if he objects thereto before arguments to the jury are begun stating distinctly the matter to which he objects and the grounds of his objection." *Id.* In that light, the circuit court had no basis for finding reversible error with regard to Instruction No. 1.

■ Instruction No. 4 was given, over Appellee's objection, as follows:

A warranty of merchantability is not excluded with respect to any defect which the examination by the Defendant would not reasonably disclose at the time of purchase. Any defects determined by the Defendant to have existed at the time of purchase, found within a reasonable time after purchase are subject to a warranty of merchantability.

Instruction No. 9 was also given, over Appellee's objection, as follows:

If you find, by a preponderance of the evidence, that a defect existed in the transmission of the vehicle, the subject of this action, at the time that the vehicle was sold by the Plaintiff to the Defendant, then you may find that the Plaintiff was required to repair the vehicle without cost to the Defendant pursuant to the implied warranty

of merchantability and fitness required pursuant to West Virginia law.

Appellee's articulated basis for objecting to these two instructions was his erroneous belief that no implied warranties applied to Appellant's purchase of the GMC Jimmy because an express warranty was given and because there was no special reliance by Appellant on Appellee's skill and judgment. From the circuit court order reversing the magistrate court it clearly appears that the ruling of the circuit court rejecting these two instructions also proceeded from the belief that no implied warranties applied to the sale because a limited express warranty had been given and because the Consumer Credit and Protection Act did not apply to the sale of used vehicles. As we have noted, the implied warranties did apply to Appellant's purchase. Therefore, there is no merit to Appellee's expressed objections to the instructions.

While somewhat abstract, the instructions appear to have adequately advised the magistrate court jury of the issues to be decided regarding the implied warranties and may be read as correct statements of the law. In view of the fact that Appellee offered no alternative instructions that might have more concretely applied the law to the facts, in light of the fact that the jury was adequately advised of the law to apply, and in view of the fact that the circuit court proceeded from an incorrect view of the law of implied warranties, we believe the circuit court erred in designating these two instructions as a basis for reversing the judgment of the magistrate court and the verdict upon which it was based.[22] We have previously stated in *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51 at 70, 479 S.E.2d 561 at 580, (1996), that

"[t]o challenge jury instructions successfully, a challenger must first demonstrate the charge as a whole created a substantial and ineradicable doubt about whether the jury was properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record,

that the challenged instruction could not have affected the outcome of the case." *Id.* (footnote omitted).

### 3. Verdict Contrary To Law and Evidence

Finally, Appellant complains that the circuit court erred in finding the verdict of the jury contrary to the law and the evidence. This Court has articulated the burden for overturning a jury verdict in syllabus point two of *French,* as follows: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." *Id.* at 66, 54 S.E.2d at 38.

It is readily evident that the facts below were in substantial conflict. These facts were submitted to the jury. The jury verdict strongly suggests that the jury weighed the opposing evidence with care, understood the dispute and rendered a decision on the evidence under the law as it was given to them in the instructions. We believe the circuit court, operating under a substantial misapprehension as to the applicable law, abused its discretion in setting aside the jury's verdict and that its decision must, therefore, be reversed.

### 4. Attorney Fees

The circuit court found the award of attorney fees by the magistrate court not to be appropriate. We disagree. West Virginia Code § 46A–5–104 (1994) provides that "[i]n any claim brought under this chapter [46A] applying to illegal, fraudulent or unconscionable conduct ... the court may award all or a portion of the costs of the litigation, including reasonable attorney fees ... to the consumer." W.Va.Code § 46A–5–104 (1994). The actions of Appellee in denying redress to Appellant for failing to honor the implied warranties, as found by magistrate court jury, justified the trial court in awarding attorney fees.

---

22. We limit our decision regarding these instructions to the circumstances of this case. We do

not encourage the use of the exact language of these instructions in future litigation.

### D. Conclusion

For the reasons assigned, the judgment of the Circuit Court of Grant County is reversed, and this matter is remanded to the circuit court, with directions to enter judgment for Appellant under the power granted by West Virginia Code § 50–5–12(c)(4)D (1994). That judgment shall be in the principal sum awarded by the magistrate jury, the costs, including attorney fees, awarded by magistrate court, pre-judgment interest and such sum as the circuit court shall determine for costs, including reasonable attorney fees, incurred by Appellant subsequent to the magistrate court judgment by reason of the appeal to the circuit court and this Court, with interest from the date of the circuit court judgment.

Reversed and Remanded.

DAVIS, Justice, concurring.

The plurality opinion reinstated a verdict returned by a jury in magistrate court, after concluding the circuit court erred by vacating that verdict. I agree with the plurality opinion's holding that the circuit court's ruling should be reversed and the jury verdict reinstated. However, I do not agree with the reasoning used by the plurality in reaching its conclusion. For the reasons set forth below, I concur in the judgment of the plurality opinion, but disagree with its rationale.

### A. This Case Should Have Been Resolved on the Grounds of Procedural Defects

The appellee, Keith Wolfe, d/b/a Petersburg Motor Company (hereinafter referred to as "Mr. Wolfe"), failed to file a notice of appeal and petition for appeal from magistrate court to the circuit court. The plurality opinion ultimately reasoned that neither of these procedural defects precluded the circuit court's jurisdiction. I believe that, singularly or collectively, the procedural defects precluded the circuit court's jurisdiction.

*1. Controlling law.* Resolution of these issues is controlled by this Court's decision in *Cable v. Hatfield*, 202 W.Va. 638, 505 S.E.2d 701 (1998). *Cable* involved the filing of a petition for writ of mandamus in the circuit court to compel the circuit clerk to file a civil complaint submitted by mail. The circuit court dismissed the mandamus petition for several reasons. One reason was the plaintiff's failure to file a civil case information statement with the complaint. On appeal, this Court addressed the issue of whether or not a circuit clerk could refuse to file a complaint that did not contain a civil case information statement.

In *Cable* we found that under Rule 3 of the West Virginia Rules of Civil Procedure, "[e]very complaint shall be accompanied by a completed civil case information statement in the form prescribed by the Supreme Court of Appeals." *Cable* concluded that "[t]his rule utilizes the term 'shall,' and thus is mandatory." *Cable*, 202 W.Va. at 646, 505 S.E.2d at 709. As a result of finding that Rule 3 "mandated" the filing of a civil case information statement with a complaint, this Court set out the following legal principle in syllabus point 5 of *Cable*:

> Rule 3 of the West Virginia Rules of Civil Procedure requires, in mandatory language, that a completed civil case information statement accompany a complaint submitted to the circuit clerk for filing. In the absence of a completed civil case information statement, the clerk is without authority to file the complaint.

Following *Cable*, I now proceed to discuss the fatal errors in Mr. Wolfe's attempt to prosecute his appeal from magistrate court to circuit court.

*2. Failure to file notice of appeal in magistrate court.* The record is clear. Mr. Wolfe did not file a "notice of appeal" in this case. This issue is addressed by Rule 18(a) of the Rules of Civil Procedure for Magistrate Courts. Rule 18(a) provides explicitly that "[n]otice of appeal *shall* be filed in magistrate court." [1] The language in this rule is clear and mandatory. Under Rule 18(a) any party seeking to appeal a decision from magistrate court to the circuit court *must* file a notice of appeal. Under this Court's ruling and reasoning in *Cable*, failure to comply with Rule 18(a)'s mandatory procedure is fatal to an appeal and prevents a circuit court

---

1. The rule sets out a time frame in which the notice of appeal must be filed.

from having jurisdiction to proceed to the merits of a case.[2] Consequently, in the instant proceeding a basis for reversing the circuit court's decision should have been Mr. Wolfe's failure to file the mandatory notice of appeal.[3]

**3. Failure to file petition for appeal in circuit court.** Mr. Wolfe did not file a petition for appeal in circuit court. Yet, the case was reviewed by the circuit court. While I believe that the failure to file a notice of appeal was sufficient to reverse this case, I will assume for the sake of argument that such failure was harmless error so that I may reach the issue of the failure to file a petition for appeal.

The procedure for filing a petition for appeal is outlined in W. Va.Code § 50–5–12(c) (1994) (Repl.Vol.2000), which states:

(c) In the case of an appeal of a civil action tried before a jury, the following provisions shall apply:

(1) To prepare the record for appeal, the party seeking the appeal *shall file with the circuit court a petition* setting forth the grounds relied upon, and designating those portions of the testimony or other matters reflected in the recording, if any, which he or she will rely upon in prosecuting the appeal....

(Emphasis added). The statute clearly mandates the filing of a petition for appeal. The statute leaves no room for discretion. If a party wishes to appeal, that party *must* file a petition for appeal. Pursuant to *Cable*, failure to comply with the statute's mandatory

procedure is fatal to an appeal and prevents a circuit court from having jurisdiction to proceed to the merits of the case. This Court has previously held that an " 'appellate court does not acquire jurisdiction and cannot entertain an appeal unless the appeal petition is filed within the prescribed appeal period.' " *Asbury v. Mohn*, 162 W.Va. 662, 665, 256 S.E.2d 547, 548–549 (1979) (quoting *State v. Legg*, 151 W.Va. 401, 406, 151 S.E.2d 215, 219 (1967)).

In the instant proceeding, the circuit court was reviewing this case under its "appellate" jurisdiction. As an appellate court, it could not obtain jurisdiction of the appeal without a petition for appeal being filed.[4] Consequently, the circuit court's decision should have been reversed on this basis. For the reasons herein explained, I concur with the majority opinion's ultimate decision to reverse the circuit court's ruling, though I reach this conclusion on different grounds. I am authorized to state that Justice Maynard joins me in this concurring opinion.

McGRAW, Chief Justice, concurring.

(Filed Jan. 14, 2002)

I agree with the majority that the provisions of W. Va.Code § 46A–6–107 (1963) prevent the seller of a used car from limiting implied warranties of merchantability and fitness for a particular purpose. I also concur that, by declaration of the Legislature, the Consumer Credit and Protection Act applies to sales of used cars.

---

**2.** In the context of criminal appeals this Court has held firm to the rule that filing of notice of intent to appeal "is mandatory and jurisdictional." Syl. pt. 1, in part, *State v. Legg*, 151 W.Va. 401, 151 S.E.2d 215 (1967). *See also City of Philippi v. Weaver*, 208 W.Va. 346, 540 S.E.2d 563 (2000) (affirming defendant's conviction after finding she failed to timely file a notice of appeal from the circuit court to the Supreme Court); *Spaulding v. Warden, West Virginia State Penitentiary*, 158 W.Va. 557, 212 S.E.2d 619 (1975) (holding that assignments of error for direct appeal were lost because of failure to file notice of intent to appeal).

**3.** I take issue with and strongly disapprove of the plurality opinion's reasoning that filing a bond form may take the place of filing an actual notice of appeal. Nowhere in Rule 18(a), the control-

ling law, does it provide for an alternative method for satisfying the requirement of filing a notice of appeal.

**4.** The fact that Mr. Wolfe filed a memorandum of law does not cure the jurisdictional defect. In addition to requiring a petition for appeal, the applicable statute provides for submission of memorandum of law. W. Va.Code § 50–5–12(c)(3) (1994) (Repl.Vol.2000) states:

After the record for appeal is filed in the office of the circuit clerk, *the court may*, in its discretion, schedule the matter for oral argument or require the parties to submit written memoranda of law.

(Emphasis added). Under this provision, the trial court has discretionary authority to require the filing of a memorandum of law.

I write separately because I am concerned that this opinion might suggest that there are no circumstances in which a party may sell a mechanically defective car to a knowing buyer. There are many individuals who, for one reason or another, fully intend to buy a car that doesn't work well, or has some obvious mechanical problem. Some people are mechanically inclined; some might wish to buy a car for its parts, or, in the case of certain cars, for their future value as collectibles. If the facts are made clear to the buyer, that is, if it is clear that the vehicle has adequate "fitness" for the "particular purpose" intended by the buyer, then it is acceptable to sell a vehicle that is not in perfect working condition.

For a variety of historical reasons, the so called "used-car-dealer" enjoys a position right next to lawyers and politicians in the societal pantheon of the untrustworthy, which no doubt presented a disadvantage to appellee's counsel from the outset. But just as is the case with lawyers and politicians, most car dealers are honest people trying to make a living, and are deserving of representation. The specific facts of this case suggest that the dealership did make a reasonable effort to fulfill its obligations to the buyer. However, as the majority points out, this question of fact was answered by a jury, as is proper, and that jury found against the dealer. I agree it is not ours to upset that judgment in this case.

Having expressed my limited reservations, I respectfully concur with the majority.